GLENN W. JOHNSON, ADMINISTRATOR OF THE ESTATE OF JAMES WAYLAND JOHNSON, AND BARBARA K. JOHNSON AND GLENN W. JOHNSON v̇. RUARK OBSTETRICS AND GYNECOLOGY ASSOCIATES, P.A. (FORMERLY THE RUARK CLINIC, P.A.), L. JOSEPH SWAIM, THOMAS B. GREER, WARNER L. HALL AND COURTNEY D. EGERTON

No. 177PA88

(Filed 29 August 1990)

1. **Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — negligent infliction of emotional distress — relation to other cause — concern for another — overruling of Hinnant decision**

The opinion in *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307 (1925) is overruled to the extent that it may be read as barring claims for negligent infliction of emotional distress when such claims are unrelated to any other cause of action, or as totally barring any such claims when based upon emotional distress arising from a plaintiff's concern for another person's condition.

**Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.**

2. **Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — negligent infliction of emotional distress — physical injury — overruling of Williamson decision**

The opinion in *Williamson v. Bennett*, 251 N.C. 498, 112 S.E.2d 48 (1960) is disapproved to the extent that it may be read as requiring a physical injury in addition to mental or emotional injury to sustain a claim for negligent infliction of emotional distress or as barring any recovery for emotional distress caused by concern for another.

**Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.**

3. **Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — negligent infliction of emotional distress — physical impact, injury or manifestation — overruling of Court of Appeals' decisions**

Various decisions of the Court of Appeals are overruled to the extent that they require a plaintiff to show, in addition to mental or emotional injury, a physical impact, physical injury, or physical manifestation of emotional distress to succeed on a claim of negligent infliction of emotional distress.

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.

4. **Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — negligent infliction of emotional distress — severity of distress — physical impact, injury or manifestation unnecessary**

Where a defendant's negligent act has caused a plaintiff to suffer mere fright or temporary anxiety not amounting to severe emotional distress, the plaintiff may not recover damages for his fright and anxiety on a claim for infliction of emotional distress. Where, however, such a plaintiff has established that he or she has suffered severe emotional distress as a proximate result of the defendant's negligence, the plaintiff need not allege or prove any physical impact, physical injury or physical manifestation of emotional distress in order to recover on a claim for negligent infliction of emotional distress.

Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.

5. **Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — negligent infliction of emotional distress — necessary allegations — meaning of severe emotional distress**

To state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress. In this context, the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.

6. **Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — negligent infliction of emotional distress — physical impact, injury or manifestation not required — concern for another**

Neither a physical impact, a physical injury, nor a subsequent physical manifestation of emotional distress is an ele-

**JOHNSON v. RUARK OBSTETRICS**

[327 N.C. 283 (1990)]

ment of the tort of negligent infliction of emotional distress. Further, a plaintiff may recover for his or her severe emotional distress arising due to concern for another person if the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and foreseeable result of the defendant's negligence.

  **Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.**

**7. Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — emotional distress — concern for another — factors considered**

  Factors to be considered on the question of foreseeability of emotional distress arising from concern for another include the plaintiff's proximity to the negligent act, the relationship between plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act.

  **Am Jur 2d, Damages §§ 481, 871, 872; Fright, Shock, and Mental Disturbance §§ 1, 3, 13, 23, 24, 36, 37.**

**8. Damages § 3.4 (NCI3d); Negligence § 1.1 (NCI3d) — parents of stillborn fetus — negligent infliction of emotional distress — statement of claim for relief against physicians**

  The father and mother of a stillborn fetus stated individual claims for negligent infliction of emotional distress against defendant physicians whose negligence allegedly caused the stillbirth where the complaint alleged that, as a foreseeable and proximate result of defendants' negligence, each plaintiff experienced "past, present and future pain and suffering and emotional distress of enduring the labor, with the knowledge that their unborn child was dead, and the delivery of that dead child."

  **Am Jur 2d, Fright, Shock, and Mental Disturbance § 57.**

Justice MEYER dissenting.

Justice WEBB dissenting.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 89 N.C. App. 154, 365 S.E.2d 909 (1988), reversing the judgment dismissing the claims against all the defendants entered by *Bailey (James H. Pou), J.,* at the

**JOHNSON v. RUARK OBSTETRICS**

[327 N.C. 283 (1990)]

29 May 1986 Regular Non-Jury Civil Session of Superior Court, WAKE County. Heard in the Supreme Court on 13 December 1988.

*Merriman, Nicholls & Crampton, P.A., by Steven L. Evans, for the plaintiff appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson and William H. Moss, for the defendant appellants.*

*Joseph E. Elrod III and J. Reed Johnston, Jr., for the North Carolina Society of Obstetricians and Gynecologists, Amicus Curiae.*

*James P. Cooney III and Charles V. Tompkins, Jr., for the North Carolina Association of Defense Attorneys, Amicus Curiae.*

MITCHELL, Justice.

We must decide in this case whether the father and mother of a stillborn fetus have individual claims for negligent infliction of emotional distress against the defendants whose alleged negligence caused the stillbirth. For reasons differing from those relied upon by the Court of Appeals, we hold that both of the plaintiffs have stated cognizable claims, and we affirm the holding of the Court of Appeals.

As this case was dismissed prior to trial, the facts set forth herein are taken from the allegations of the complaint, which must be taken as true at this point. *See Ragsdale v. Kennedy,* 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). We express no opinion, of course, as to whether the plaintiffs will be able to prove at trial that these allegations are true.

The complaint alleged that the plaintiffs were expectant parents; the defendants were the doctors and their professional association who provided prenatal medical care to the plaintiff Barbara Johnson. Mrs. Johnson learned on 1 March 1983 that she was about ten weeks pregnant. She was examined monthly from March through July, then examined almost weekly from August until the stillbirth in early October. Over this period, Mrs. Johnson was informed several times that her pregnancy was progressing normally, and she continued to experience fetal movement through the evening of 2 October 1983. On 3 October 1983, Mrs. Johnson began experiencing contractions and was admitted to Wake Medical Center at 5:30 p.m. Although the defendant Dr. Egerton had reported

that fetal heart tones were present at 9:30 that morning, stethoscopic and ultrasound monitoring conducted after Mrs. Johnson's admission failed to reveal any fetal heart tones. The plaintiffs were notified at approximately 8:00 p.m. that the fetus was dead. Mrs. Johnson's labor continued until the fetus was stillborn at 3:27 a.m. on 4 October 1983.

After the stillbirth, Mrs. Johnson's husband, Glenn Johnson, as administrator of the fetal estate, brought a wrongful death claim against the defendants under N.C.G.S. § 28A-18-2. In the same complaint, the plaintiffs Glenn and Barbara Johnson also brought claims for negligent infliction of emotional distress in their individual capacities as father and mother of the fetus. The central allegation of the plaintiffs' claims was that the defendants were negligent by providing Mrs. Johnson inadequate prenatal care, thereby proximately causing the stillbirth and related injuries. The complaint sought damages for injuries to the individual plaintiffs in the form of costs and expenses, lost wages, and the "past, present and future pain and suffering and emotional distress of enduring the labor, with the knowledge that their unborn child was dead, and the delivery of the dead child."

The defendants answered, denying negligence. The answer also contained a motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief could be granted. The defendants subsequently moved for summary judgment, and after argument the trial court dismissed all of the plaintiffs' claims. Although the defendants' last motion was for summary judgment, the trial court considered the matter as a motion to dismiss pursuant to Rule 12(b)(6), or a motion for a judgment on the pleadings pursuant to Rule 12(c). *See Burton v. Kenyon*, 46 N.C. App. 309, 264 S.E.2d 808 (1980).

The Court of Appeals reversed the trial court's dismissals of the wrongful death claim by Glenn W. Johnson as administrator, the claims for emotional distress by the plaintiff parents as individuals, and the claim of Mrs. Johnson for other injuries she sustained throughout her pregnancy. *Johnson v. Ruark Obstetrics*, 89 N.C. App. 154, 365 S.E.2d 909 (1988). Regarding the plaintiffs' emotional distress claims, the defendants argued to the Court of Appeals, as they now argue to this Court, that "to maintain an action for the negligent infliction of mental distress [*i.e.*, emotional distress], North Carolina law requires that the mental distress either

be caused by physical injury or, in the absence of any impact or physical injury caused by the defendants, that the mental distress must be the cause of physical injury." The defendants also argued, as they do here, that "North Carolina law does not recognize recovery for mental anguish caused by concern for the safety and welfare of another." As to those issues, the Court of Appeals concluded that Mrs. Johnson had alleged two physical injuries. First, she alleged that her diabetic condition was not properly treated by the defendants. *Id.* at 166, 365 S.E.2d at 916. Second, the Court of Appeals reasoned that the alleged fatal physical injury to the fetus was also an injury to Mrs. Johnson, since the fetus was physically attached to the mother. *Id.* at 166-67, 365 S.E.2d at 916-17. Regarding Mr. Johnson's claim, the Court of Appeals concluded that his allegations of emotional distress also amounted to allegations of foreseeable physical injury to him, and contained nothing which would bar him from later forecasting or introducing more specific evidence that the defendants' negligence had caused him physical injury. *Id.* at 167-70, 365 S.E.2d at 917-19. Regarding the issue of allowing recovery for emotional distress caused by concern for another person, the Court of Appeals held that neither of the plaintiffs' claims were too remote to bar recovery as a matter of public policy. *Id.* at 167, 169-70, 365 S.E.2d at 917-19. We allowed the defendants' petition for discretionary review, which was limited to questions concerning the plaintiffs' claims for negligent infliction of emotional distress.

I.

The tort of negligent infliction of emotional distress apparently has a long and winding history in every state. Many scholarly articles admirably attempt to collect and analyze state and national trends. *See, e.g.,* Comment, *Negligent Infliction of Mental Distress: A Jurisdictional Survey of Existing Limitation Devices and Proposal Based on an Analysis of Objective Versus Subjective Indices of Distress,* 33 Vill. L. Rev. 781 (1988) (herein "Comment"); *Prosser and Keeton on the Law of Torts* § 54 (5th ed. 1984); Byrd, *Recovery For Mental Anguish In North Carolina,* 58 N.C. L. Rev. 435 (1980); Annot. "Relationship Between Victim And Plaintiff-Witness As Affecting Right To Recover Damages In Negligence For Shock Or Mental Anguish At Witnessing Victim's Injury Or Death," 94 A.L.R.3d 486 (1979); Annot. "Right To Recover Damages In Negligence For Fear Of Injury To Another, Or Shock Or Mental Anguish At Witnessing Such Injury," 29 A.L.R.3d 1337 (1970);

## JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

Annot. "Right to recover for emotional disturbance or its physical consequences, in the absence of impact or other actionable wrong," 64 A.L.R.2d 100 (1959). *See also* Restatement (Second) of Torts §§ 313, 436-36A (1965), and cases collected therein.

For purposes of our analysis, it will suffice to say that today, many states appear to apply one of three prerequisite "tests" to claims for negligent infliction of emotional distress, or one of several variants on those basic tests. As a prerequisite to a valid claim for negligent infliction of emotional distress, some states require that the act causing the emotional distress be accompanied by some physical impact to the plaintiff. States still retaining this requirement often are referred to as having a "physical impact" requirement. *See, e.g.*, Comment, 33 Vill. L. Rev. at 782-94 (current "physical impact" states are listed at 792 n.59). Some states, however, have abandoned the physical impact requirement, adopting instead a requirement that the plaintiff must have been placed in imminent danger of physical harm by the defendant's action and must have suffered a subsequent physical manifestation of the emotional distress. *See id.* at 794-96 & 796 n.91; Restatement (Second) of Torts §§ 313, 436. These requirements are known as the "zone of danger" and "physical manifestation" requirements. "Notably, this test does not extend [a defendant's] liability to those individuals who are foreseeably psychologically affected, but rather is limited to those who are placed in imminent apprehension of physical harm at the time of the breach." Comment, 33 Vill. L. Rev. at 794 (footnotes omitted). (The Comment, *id.* at 796 n.91, lists North Carolina as among the states having both "zone of danger" and "physical manifestation" requirements. As explored and explained in this opinion, that categorization is incorrect.) Some states allow a plaintiff within the "zone of danger" to recover, even though his or her emotional distress was caused by concern for the safety of another person, instead of by concern for personal safety. *See id.* at 799. Other states retain the "zone of danger" requirement, but do not require any physical manifestation of the emotional distress. *See id.* at 796-98 & 798 n.92, 802 n.119.

In cases involving emotional distress arising from the plaintiff's concern for another person, several states have abandoned the "zone of danger" requirement, adopting various versions of what is often called a "*Dillon* test" or a "foreseeable plaintiff" test. *See id.* at 803-17. These tests place various emphases on three main factors: (1) the proximity of the plaintiff to the physical site

**JOHNSON v. RUARK OBSTETRICS**

[327 N.C. 283 (1990)]

of the alleged negligent act; (2) whether the plaintiff's emotional distress was caused by observing the negligent act, as opposed to distress caused by learning of the act via some intermediary; and (3) the relationship between the plaintiff and the victim. *See Dillon v. Legg*, 68 Cal. 2d 728, 740-41, 441 P.2d 912, 920, 69 Cal. Rptr. 72, 80 (1968). The factors announced in *Dillon*, as well as the mechanistic application of those factors, have been extensively and soundly criticized. *See, e.g.*, Bell, *The Bell Tolls: Toward Full Tort Recovery For Psychic Injury*, 36 U. Fla. L. Rev. 333, 338-39 (1984); Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries*, 35 Hastings L.J. 477, 483-96 (1984); Comment, *Duty, Foreseeability, and the Negligent Infliction of Emotional Distress*, 33 Me. L. Rev. 303, 316 (1981).

While some authors have miscategorized the law of North Carolina (as we explore and explain herein), the authors who have collected other states' cases are likely correct in most of their analyses and generalizations — certainly to the extent of recognizing that many different doctrines exist with respect to claims for negligent infliction of emotional distress. We perceive no single clear doctrine to which it can be said that a majority of states adhere. However, it has been noted that, "[a]s the courts have faced new and more compelling fact patterns, the tests have progressed in a linear fashion towards allowing greater degrees of recovery." Comment, 33 Vill. L. Rev. at 817.

## II.

The issues before us in this appeal must, of course, be decided under North Carolina law. Claims for negligent infliction of emotional distress have been recognized by this Court for at least one hundred years. *See generally* Byrd, *Recovery for Mental Anguish in North Carolina*, 58 N.C. L. Rev. 435 (1980). Although the term "negligent infliction of emotional distress" is of fairly recent origin, this Court has dealt with negligently inflicted emotional distress (often called "mental anguish" or "mental distress") many times. As North Carolina tort law has expanded over time to more frequently allow juries to determine questions of proximate causation and foreseeability, our courts have occasionally made misstatements concerning actions for emotional distress. Such misstatements have led some to believe that an action for negligent infliction of emotional distress may not be maintained absent some physical impact,

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

physical injury or subsequent physical manifestation of the emotional distress, and also that recovery may not be had for emotional distress caused by a plaintiff's concern for another person. Further, varying and at times inconsistent analyses used by our courts have apparently buttressed such misconceptions. As we now undertake to explore and explain, our law includes no arbitrary requirements to be applied mechanically to claims for negligent infliction of emotional distress.

A.

The history of the tort of negligent infliction of emotional distress in North Carolina begins for all practical purposes with *Young v. Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890) (Clark, J., later C.J.). On 26 February 1889 the plaintiff's stepfather-in-law sent the plaintiff a telegram stating: "Come in haste. Your wife is at the point of death." *Id.* at 370, 11 S.E. at 1044. The telegram arrived at the New Bern telegraph office on 27 February. The plaintiff was well-known in New Bern, and his business was within 400 yards of the telegraph office. The plaintiff did not receive the telegram, however, until he demanded it at the telegraph office on 6 March, having received a letter from the sender on 5 March — after the plaintiff's wife was dead and buried. The plaintiff sued the telegraph company in tort, seeking damages for the "great pain, mental anguish and distress" caused by the defendant's negligence. *Id.* at 371, 11 S.E. at 1044. The defendant demurred, arguing that the plaintiff was not entitled to recover for mere mental anguish and grief. The trial court overruled the defendant's demurrer, and the defendant appealed.

The primary question this Court addressed in *Young* was "whether the plaintiff can recover for mental pain and anguish when there has been no physical injury." *Id.* at 373, 11 S.E. at 1045. After collecting and summarizing a number of other states' opinions on the topic, we noted that the issue was "one of first impression in this State." *Id.* at 383, 11 S.E. at 1048. We then noted other causes of action where damages for mental anguish were available absent physical injury, and that some of those claims could properly be brought under either contract or tort theories. *Id.* at 384-85, 11 S.E. at 1048. We then went on to hold that:

> When a passenger, while traveling on the [railway] cars, is injured by a collision or other negligence, though there is a breach of the contract of safe carriage, yet the plaintiff

can elect to hold the carrier liable in tort for the negligence which caused the injury.

By analogy, when there is an injury caused by negligence and delay in the delivery of a telegram, the party injured is entitled to sue *in tort* for the wrong done him. . . . [I]t is said: "We have no forms of action or technical rules which can prevent a plaintiff, upon a statement of facts of his case, from recovering all the damages shown to be sustained. If the facts show a breach of contract, and also that the breach is of such a character as to authorize an action of tort, all the damages for the thing done or omitted, either *ex contractu* or *ex delicto*, may be recovered in the one action."

It seems to us that *this action is in reality in the nature of tort for the negligence*, and that, as is usually the case in such actions, the plaintiff is entitled to recover, in addition to nominal damages, compensation for the actual damages done him, and that mental anguish is actual damage.

It is very truthfully and appropriately remarked by a learned author that "the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter. Indeed, the sufferings of each frequently, if not usually, act reciprocally on the other." And Cicero (who certainly may be quoted as an authority among lawyers) says, in his Eleventh Philippic against Anthony, "quo major vis est animi quam corporis, hoc sunt graviora ea quae concipiuntur animo quam illa quae corpore." "For, as the power of the mind is greater than that of the body, in the same way the sufferings of the mind are more severe than the pains of the body."

The difficulty of measuring damages to the feelings is very great, but the admeasurement is submitted to the jury in many other instances, as above stated, and it is better it should be left to them, under the wise supervision of the presiding judge, with his power to set aside excessive verdicts, than, on account of such difficulty, to require parties injured in their feelings by the negligence, the malice or wantonness of others, to go without remedy.

*Id.* at 385-86, 11 S.E. at 1048-49 (emphasis added) (citations omitted). In our earliest consideration, this Court thus held that "mental

injury" is simply another type of "injury"—like "physical" and "pecuniary" injuries—for which the plaintiff could recover in tort upon showing that his injury was proximately and foreseeably caused by the defendant's negligence, and that the plaintiff could recover for emotional distress caused by his concern for another person, his wife.

Fourteen years later, in *Bowers v. Telegraph Co.*, 135 N.C. 504, 47 S.E. 597 (1904), we reaffirmed that mental injury is as real as physical injury, in a case in which the plaintiff's emotional distress was alleged to have arisen from concern for another person's condition. In *Bowers*, a mother sent her son a telegram to "come at once." Delivery of the telegram was delayed, and the plaintiff son missed the earliest train that could have taken him to his mother's home. The telegram was sent not because of illness, but because the plaintiff's mother wanted to see her son on business matters. Nonetheless, the plaintiff claimed that he had suffered emotional distress, apparently from concern over his mother's health. This Court held that on the peculiar facts before it there could be no recovery, but *only* because the evidence did not tend to show that the plaintiff's distress was caused by the defendant's negligence:

> [W]e see no ground to authorize a recovery by the plaintiff for mental anguish. His mother was not dead nor at the point of death. He knew that, because her name was signed to the dispatch. It was his own misapprehension which caused him any uneasiness, and not the negligence and delay of the defendant. . . . Mental anguish is as real as physical, and recovery in proper cases is allowed of just compensation when anguish, whether physical or mental, is caused by the negligence, default or wrongful act of another. The difficulty of measuring compensation does not bar a recovery for physical anguish nor when the anguish is mental. But if the plaintiff suffered any mental anguish in this case it was not caused by the negligence of the defendant.

*Id.* at 505, 47 S.E. at 597. This Court again reaffirmed that mental injury, standing alone, is compensable and recognized "the growing tendency of judicial opinion to allow compensatory damages for mental suffering even when not connected with any physical suffering" in *Green v. Telegraph Co.*, 136 N.C. 489, 497, 49 S.E. 165, 168 (1904).

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

In 1905 this Court first made the clear distinction between "mental anguish," which we now call "emotional distress" and for which a plaintiff may recover on a separate tort claim for negligent infliction of emotional distress, and mere temporary "fright," "disappointment," or "regret," for which no such recovery is allowed. *Hancock v. Telegraph Co.*, 137 N.C. 498, 500-501, 49 S.E. 952, 953 (1905) (a case which otherwise applied Maryland law). We went on to state that under North Carolina law, *"[t]he right to recover damages for purely mental anguish, not connected with or growing out of a physical injury, is the settled law of this State, and it is too late now to question it." Id.* (emphasis added).

Later, in *Kimberly v. Howland*, 143 N.C. 399, 55 S.E. 778 (1906), we stated:

> All the courts agree that mere fright, unaccompanied or followed by physical injury, cannot be considered an element of damage. . . . [However, t]he nerves are as much a part of the physical system as the limbs . . . . We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether wilful or otherwise, none the less strongly because the physical injury consists of a wrecked nervous system instead of lacerated limbs. Injuries of the former class are frequently more painful and enduring than those of the latter. A recent writer on the subject trenchantly says: "To deny recovery against one whose wilful or negligent tort has so terribly frightened a person as to cause his death, or leave him through life a suffering and helpless wreck, and permit a recovery for exactly the same wrong which results, instead, in a broken finger, is a travesty upon justice. . . ."

*Id.* at 403-04, 55 S.E. at 780 (quoting *Case and Comment*, August 1906). The *Kimberly* opinion was the first opinion of this Court to characterize, unfortunately, emotional injury as a type of physical injury — albeit injury for which plaintiffs could recover in emotional distress actions. Our earlier opinions had *not* treated emotional distress as such a type of compensable physical injury, but simply as *another type of injury* for which a plaintiff could recover. Such mischaracterizations of emotional distress as a type of physical injury do not prevent plaintiffs from recovering on claims for emotional distress, but seem to have misled some to infer that a plaintiff bringing an emotional distress claim must prove emotional injury

## JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

*plus* some *additional* physical injury; yet our law includes no such requirement. Therefore, we disapprove the unnecessary and erroneous terminology used in *Kimberly*, which apparently led many lawyers and some scholars away from the underlying reasoning of our well settled law allowing recovery for emotional distress, not connected with or growing out of a physical injury, in negligence actions.

### B.

A number of our early cases dealt with emotional distress caused by negligent acts relating to corpses. *E.g., Morrow v. R.R.*, 213 N.C. 127, 195 S.E. 383 (1938) (mutilation of corpse); *Bonaparte v. Funeral Home*, 206 N.C. 652, 175 S.E. 137 (1934) (husband's body withheld from widow to induce payment for embalming services); *Kyles v. R.R.*, 147 N.C. 394, 61 S.E. 278 (1908) (mutilation of corpse). In *Byers v. Express Co.*, 165 N.C. 542, 81 S.E. 741 (1914) (Clark, C.J.), *rev'd on other grounds*, 240 U.S. 612, 60 L. Ed. 825 (1916), the plaintiff widower sued the defendant railway for mental anguish caused by the defendant's negligent misrouting of the casket and burial clothes to be used for his wife's funeral in South Carolina. As a result of the delay, the body was buried in a "cheap casket" and "without proper burial clothing." *Id.* at 544, 81 S.E. at 742. The jury awarded mental anguish damages of $200, and this Court affirmed. The Supreme Court of the United States reversed, holding that under applicable federal interstate commerce statutes, the defendant had limited its liability under the bill of lading to $50, based upon the value and weight of the shipment. *Southern Exp. Co. v. Byers*, 240 U.S. 612, 613-14, 60 L. Ed. 825, 826-27 (1916).

Although *Byers* was reversed on federal statutory grounds, the Supreme Court of the United States, in dicta, questioned this Court's view of the evidence and our resulting application of the common law. Our Court had noted that:

> There was evidence of mental suffering, but it would have been inferred as a matter of law upon the circumstances of this case. Under the law of this State, where the contract of shipment was made, the plaintiff is entitled to recover such damages. Upon all the authorities, damages for mental anguish are compensatory damages. . . . "Wounding a man's feelings is as much actual damages as breaking his limbs. The difference is that one is internal and the other external; one mental,

the other physical. At common law, compensatory damages include, upon principle and upon authority, salve for wounded feelings, and our Code had no purpose to deny such damages where the common law allowed them."

It makes no difference, as this Court has always held, whether the action or claim to recover damages for mental suffering is based upon breach of contract or upon tort.

*Byers v. Express Co.*, 165 N.C. at 545-46, 81 S.E. at 742 (citations omitted). The Supreme Court of the United States, however, characterized the claim as one "too vague for legal redress." *Southern Exp. Co. v. Byers*, 240 U.S. at 615, 60 L. Ed. at 827. However the Courts may have disagreed over the evidence and the law, the views of the Supreme Court of the United States were not, and are not, binding upon this Court with regard to questions of North Carolina common law — questions as to which this Court's holding was and is the final and controlling authority. *Lea Co. v. N.C. Board of Transportation*, 308 N.C. 603, 610, 304 S.E.2d 164, 170 (1983) (citing *Watch Co. v. Brand Distributors and Watch Co. v. Motor Market*, 285 N.C. 467, 474, 206 S.E.2d 141, 146 (1974)).

## C.

Any doubt as to whether North Carolina law allows recovery for negligent infliction of purely emotional or mental injury — without physical impact, physical injury, or physical manifestations — and, in appropriate cases, for emotional distress arising from concern for another person should have been put to rest by our decision in *Bailey v. Long*, 172 N.C. 661, 90 S.E. 809 (1916). In *Bailey*, the plaintiff widower brought suit against the defendant, a hospital owner. The plaintiff took his wife to the defendant's hospital for treatment of a broken hip. The hospital's defective construction allowed rain water to leak into the plaintiff's wife's room, covering the floor to a depth of more than an inch on several occasions, where it remained uncollected for several hours. The damp room caused the plaintiff's wife to catch a cold, which worsened into pneumonia and caused her death. The plaintiff alleged that he had "suffered great pain and mental anguish . . . [t]o his feelings and sympathies in witnessing the agony and suffering of his said wife while lingering with such cold and pneumonia, and in the act and article of death resulting therefrom." *Id.* at 662, 90 S.E. at 809. This Court, reversing the trial court's dismissal of the action, stated that:

**JOHNSON v. RUARK OBSTETRICS**

[327 N.C. 283 (1990)]

We see no reason why, if the husband can recover damages from a telegraph company for mental anguish for delay in delivering a telegram informing him of his wife's illness, he should not recover for the mental anguish occasioned by witnessing her suffering and death against the alleged author of such suffering and death.

*Id.* at 663, 90 S.E. at 810.

Unfortunately, the clear language of *Bailey* and our earlier cases — in which the plaintiffs and defendants happened to have some contractual relationship — was mischaracterized in *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307 (1925), *overruled on other grounds by Nicholson v. Hospital*, 300 N.C. 295, 266 S.E.2d 818 (1980). In *Hinnant* we made the erroneous statement that "[t]he foundation of liability in *Bailey's case* was the contractual relation between the plaintiff and the defendant." *Id.* at 125, 126 S.E. at 310. This reading of *Bailey* simply was wrong. In emotional distress cases where the plaintiff and defendant have a contractual relationship, the correct rule was and is that the contractual relationship provides a strong factual basis to support *either* a claim for emotional distress based upon a breach of the contract *or* a finding of proximate causation and foreseeability of injury sufficient to establish a tort claim for emotional distress. None of our cases prior to *Hinnant* based their holdings favorable to the plaintiffs upon the existence of a contractual relationship, and *Bailey* certainly did not. Instead, those cases had discussed how a jury could find that the contractual relationship made the plaintiffs' emotional distress all the more the proximate and foreseeable result of the defendants' negligence in an action in *tort*. None of our earlier cases had held that the contractual relationship was a prerequisite to the plaintiff's cause of action. In fact, this Court had already rejected any such notion. *E.g., Byers v. Express Co.*, 165 N.C. 542, 546, 81 S.E. 741, 742 (1914) ("It makes no difference, as this Court has always held, whether the action or claim to recover damages for mental suffering is based upon breach of contract or upon tort."), *rev'd on other (i.e., federal statutory) grounds*, 240 U.S. 612, 60 L. Ed. 825 (1916); *see Young v. Telegraph Co.*, 107 N.C. 370, 384-85, 11 S.E. 1044, 1048 (1890).

[1] *Hinnant* considered the question "whether the plaintiff may recover damages for the mental anguish she experienced from the sight and knowledge of her husband's suffering when she has no

other cause of action." *Hinnant*, 189 N.C. at 128, 126 S.E. at 312. The Court stated, contrary to established case law, that

> the general rule is that mental suffering, unrelated to any other cause of action, is not alone a sufficient basis for the recovery of substantial damages. To this rule there are exceptions, of course, as, for example, actions for breach of promise of marriage, or actions growing out of the failure properly to transmit and deliver telegraphic messages not of a pecuniary nature, and similar instances in which mental suffering is recognized as the ordinary and proximate consequence of the wrong complained of.

*Id.* at 128-29, 126 S.E. at 312 (citations omitted). *Hinnant* dealt primarily with a consortium claim, and its reasoning was later rejected and its holding as to that claim overruled. *See Nicholson v. Hospital*, 300 N.C. 295, 266 S.E.2d 818. Although the *Hinnant* opinion properly recognized lack of proximate causation or lack of foreseeability of injury as bars to many tort claims for emotional distress, its erroneous interpretation of *Bailey* and its unnecessarily broad language at other points could be read as placing limitations upon emotional distress claims not found in our law. For example, we said in *Hinnant*, without analysis or citation to any of the controlling North Carolina cases to the contrary, that:

> "In the law, mental anguish is restricted, as a rule, to such mental pain and suffering as arises from an injury or wrong to the person himself, as distinguished from that form of mental suffering which is the accompaniment of sympathy or sorrow for another's suffering, or which arises from a contemplation of wrongs committed on the person of another." 8 R.C.L., 515, sec. 73, and cases cited.

*Hinnant*, 189 N.C. at 129, 126 S.E. at 132. To the extent that it may be read as barring claims for negligent infliction of emotional distress when such claims are unrelated to any other cause of action, or as totally barring any such claims when based upon emotional distress arising from a plaintiff's concern for another person's condition, *Hinnant* failed to follow our settled common law, was erroneous and is hereby overruled. *See Nicholson v. Hospital*, 300 N.C. 295, 266 S.E.2d 818 (overruling *Hinnant* to extent it had applied such restrictions to loss of consortium claims).

## JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

Having firmly established at an early point that emotional distress, standing alone, is an actual and compensable injury, this Court turned in subsequent cases to focus more on issues of foreseeability and proximate causation. We have held in this regard that "[t]he measure of recovery [for personal injuries or other torts] is reasonable satisfaction for loss of both bodily and mental powers, and for actual suffering, both of body and mind, which are the immediate and necessary consequences of the injury." *Helmstetler v. Power Co.*, 224 N.C. 821, 824, 32 S.E.2d 611, 613 (1945), *overruled on other grounds by Nicholson v. Hospital*, 300 N.C. 295, 266 S.E.2d 818 (The central holding in *Helmstetler*, overruled in *Nicholson*, was that a husband could not recover for consortium and his emotional distress damages resulting from his concern for his wife); *see also Matthews v. Forrest*, 235 N.C. 281, 285, 69 S.E.2d 553, 556 (1952) ("The law must heed the realities of life if it is to fulfill its function"). "It is also required that the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected." *Crews v. Finance Co.*, 271 N.C. 684, 689, 157 S.E.2d 381, 385 (1967) (dealing with intentional infliction of emotional distress).

### D.

In *Williamson v. Bennett*, 251 N.C. 498, 112 S.E.2d 48 (1960), the plaintiff and defendant were involved in a minor car wreck. The evidence showed that the plaintiff experienced "no direct bodily contact and received no immediate physical injury from the collision." *Id.* at 502, 112 S.E.2d at 51. The defendant admitted negligently backing into the plaintiff's car, causing minor property damage. About one month before the incident, the plaintiff's brother-in-law, while driving his car, had collided with and killed a young child on a bicycle. When the plaintiff heard the defendant's car scrape against her own car, "she was seized with fear and anxiety that she had hit a child on a bicycle . . . . From this experience she developed a neurosis which resulted in a conversion reaction or pseudo-paralysis." *Id.*

[2] This Court was faced in *Williamson* with the question whether the plaintiff could recover for "fear and resultant neurasthenia allegedly caused by *ordinary negligence.*" *Id.* at 503, 112 S.E.2d at 51 (emphasis in original). Our holding was to reverse the trial court's award of damages for the plaintiff's mental injuries *due to a lack of evidence of proximate causation.* However, we went

on to cite and quote from statements of courts of other states, thereby erroneously suggesting that physical injury — in addition to mental or emotional injury — might be required to sustain a claim for negligent infliction of emotional distress in North Carolina. *See id.* at 503-05, 112 S.E.2d at 51-53. We now expressly disapprove any such reading of *Williamson.*

*Williamson* also could be read to have interpreted the over-broad language of *Hinnant,* which we have overruled in this case, as totally barring any recovery for emotional distress caused by concern for another. *See id.* at 508, 112 S.E.2d at 53. More recently, however, in *Nicholson v. Hospital,* 300 N.C. 295, 266 S.E.2d 818 (1980), we rejected the reasoning underlying *Williamson, Hinnant* and *Helmstetler* to the extent that those cases could be read as preventing plaintiffs from ever recovering for their emotional distress arising from their concerns for other persons, even where such results were proximately and foreseeably caused by a defendant's negligent acts. We now disapprove any such reading of *Williamson.* Common sense and precedent tell us that a defendant's negligent act toward one person may proximately and foreseeably cause emotional distress to another person and justify his recovering damages, depending upon their relationship and other factors present in the particular case. *See, e.g., Bailey v. Long,* 172 N.C. 661, 90 S.E. 809 (1916); *Bowers v. Telegraph Co.,* 135 N.C. 504, 47 S.E. 597 (1904); *Young v. Telegraph Co.,* 107 N.C. 370, 11 S.E. 1044 (1890); *Prosser and Keeton on The Law of Torts* § 54 at 360 (5th ed. 1984); Bell, *The Bell Tolls: Toward Full Tort Recovery For Psychic Injury,* 36 U. Fla. L. Rev. 333, 347-91 (1984).

E.

[3] In 1977, our Court of Appeals, relying upon *Williamson,* erroneously stated that "[f]or a plaintiff to recover for emotional or mental distress in an ordinary negligence case, he must prove that the mental distress was the proximate result of some physical impact with or physical injury to himself also resulting from the defendant's negligence." *McDowell v. Davis,* 33 N.C. App. 529, 537, 235 S.E.2d 896, 901 (citing *Williamson,* 251 N.C. 498, 112 S.E.2d 48, and *Alltop v. Penny Co.,* 10 N.C. App. 692, 179 S.E.2d 885, *cert. denied,* 279 N.C. 348, 182 S.E.2d 580 (1971) ), *disc. rev. denied, appeal dismissed,* 293 N.C. 360, 237 S.E.2d 848 (1977). The holding in *McDowell* was followed by similar holdings in *Edwards v. Advo Systems, Inc.,* 93 N.C. App. 154, 376 S.E.2d 765 (1989); *Ledford*

*v. Martin,* 87 N.C. App. 88, 359 S.E. 2d 505 (1987), *disc. rev. denied,* 321 N.C. 473, 365 S.E.2d 1 (1988); *Campbell v. Pitt County Memorial Hosp.,* 84 N.C. App. 314, 352 S.E.2d 904, *aff'd on other grounds,* 321 N.C. 260, 362 S.E.2d 273 (1987); *Woodell v. Pinehurst Surgical Clinic, P.A.,* 78 N.C. App. 230, 336 S.E.2d 716 (1985), *aff'd per curiam,* 316 N.C. 550, 342 S.E.2d 523 (1986); *Craven v. Chambers,* 56 N.C. App. 151, 287 S.E.2d 905 (1982); and *Wesley v. Greyhound Lines, Inc.,* 47 N.C. App. 680, 268 S.E.2d 855, *disc. rev. denied,* 301 N.C. 239, 283 S.E.2d 136 (1980). For the reasons previously given and explained in this opinion, to the extent that those cases require a plaintiff to show—in addition to mental or emotional injury—a physical impact, physical injury, or a physical manifestation of emotional distress to succeed on a claim of negligent infliction of emotional distress, they are overruled.

## F.

After the Court of Appeals' decision in *McDowell,* this Court made the error of stating that some "physical injury" was required to support a claim for *intentional* infliction of emotional distress. *Stanback v. Stanback,* 297 N.C. 181, 254 S.E.2d 611 (1979), *disapproved by Dickens v. Puryear,* 302 N.C. 437, 276 S.E.2d 325 (1981). In *Stanback* we were dealing with a contract claim for damages flowing from the defendant's intentional breach of a separation agreement entered into with the plaintiff. We addressed the prerequisites for recovery on a claim for emotional distress arising from a breach of contract:

> [A] claim for mental anguish damages resulting from breach of contract is stated only when the plaintiff's complaint reveals the following. First, that the contract was not one concerned with trade and commerce with concomitant elements of profit involved. Second, that the contract was one in which the benefits contracted for were other than pecuniary, *i.e.,* one in which pecuniary interests were not the dominant motivating factor in the decision to contract. And third, the contract must be one in which the benefits contracted for relate *directly* to matters of dignity, mental concern or solicitude, or the sensibilities of the party to whom the duty is owed, and which *directly* involves interests and emotions recognized by all as involving great probability of resulting mental anguish if not respected.

*Id.* at 194, 254 S.E.2d at 620. Unfortunately, we went on to say, with regard to tort claims for intentional infliction of emotional distress, that:

> Although it is clear that plaintiff must show some physical injury resulting from the emotional disturbance caused by defendant's alleged conduct, given the broad interpretation of "physical injury" in our case law, we think her allegation that she suffered great mental anguish and anxiety is sufficient to permit her to go to trial upon the question of whether the great mental anguish and anxiety (which she alleges) has caused physical injury.

*Stanback v. Stanback*, 297 N.C. at 198-99, 254 S.E.2d at 623 (footnote omitted).

While we *said* in *Stanback* that a showing of "physical injury" was required, we also relied upon our earlier statement in *Kimberly*, indicating that emotional distress is *one type* of physical injury, and *held* that the trial court's dismissal of the plaintiff's claim must be reversed. *Id.* at 199 & n.1, 254 S.E.2d at 623 & n.1 (quoting *Kimberly v. Howland*, 143 N.C. 398, 403-04, 55 S.E. 778, 780 (1906)). Thus, the statement in *Stanback* is, to some extent at least, at odds with its holding. Further, the awkward two-step analysis of *Stanback* and *Kimberly*—by which we implied that physical injury was required, but then defined emotional distress as *a type* of physical injury for which a plaintiff could recover—was entirely unnecessary in light of the analyses contained in our prior cases which *reached the same result* in a more straightforward and less cumbersome fashion. As previously discussed herein, our earlier cases did *not* require any physical impact or injury *in addition to* the mental or emotional injury itself; instead, our earlier cases simply treated emotional distress as any other type of injury— compensable if the plaintiff shows that the injury was foreseeably and proximately caused by the defendant's negligence. For this reason, we have in this opinion disapproved *Kimberly* to the extent it stands for a different rule—if it does so at all.

### G.

In 1981 we explicitly held that "physical injury" is *not* an element of the tort of *intentional* infliction of emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981). We noted in *Dickens* that:

## JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

There is, however, troublesome *dictum* in *Stanback* that plaintiff, to recover for [intentional infliction of emotional distress], "must show some physical injury resulting from the emotional disturbance caused by defendant's negligent conduct" and that the harm she suffered was a "foreseeable result." Plaintiff in *Stanback* did not allege that she had suffered any physical injury as a result of defendant's conduct. We noted in *Stanback*, however, that "physical injury" had been given a very broad interpretation in some of our earlier cases . . . .

. . . .

After revisiting *Stanback* in light of the earlier authorities upon which it is based and considering an instructive analysis of our cases in the area by [Professor Robert G. Byrd], we are satisfied that the *dictum* in *Stanback* was not necessary to the holding and in some respects actually conflicts with the holding. *We now disapprove it.*

If "physical injury" means something more than emotional distress or damage to the nervous system, it is simply not an element of the tort of intentional infliction of emotional distress.

*Id.* at 447-48, 276 S.E.2d at 332 (emphasis added) (disapproving *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)).

[4] While in *Dickens* we were dealing with a claim of *intentional* infliction of emotional distress, we also observed that:

A strong argument can be made that [this Court's] earlier decisions did not intend to make "physical injury" an essential element [of either intentional or negligent infliction of emotional distress]. When the Court said that "mere fright" was not actionable it was probably attempting to distinguish *not* between physical injury and emotional disturbance but rather between momentary or minor fright and serious emotional or nervous disorders.

*Id.* at 452 n.10, 276 S.E.2d at 334 n.10 (citation omitted). Now that we are squarely presented with the issue in this case, we conclude that this argument as stated in *Dickens* is correct, and has long been our law. Where a defendant's negligent act has caused a plaintiff to suffer mere fright or temporary anxiety not amounting to severe emotional distress, the plaintiff may not recover damages

for his fright and anxiety on a claim for infliction of emotional distress. Where, however, such a plaintiff has established that he or she has suffered severe emotional distress as a proximate result of the defendant's negligence, the plaintiff need not allege or prove any physical impact, physical injury, or physical manifestation of emotional distress in order to recover on a claim for negligent infliction of emotional distress.

## III.

[5]    Our cases have established that to state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress. *See, e.g., Bailey v. Long*, 172 N.C. 661, 90 S.E. 809 (1916); *Green v. Telegraph Co.*, 136 N.C. 489, 49 S.E. 165 (1904); *Young v. Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890). Although an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment or regret will not suffice. *E.g., Hancock v. Telegraph Co.*, 137 N.C. 498, 500-501, 49 S.E. 952, 953 (1905). In this context, the term "severe emotional distress" means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

[6]    While admittedly some of our opinions have suggested contrary results, the overwhelming weight of this Court's opinions for the past one hundred years leads us to the conclusion that neither a physical impact, a physical injury, nor a subsequent physical manifestation of emotional distress is an element of the tort of negligent infliction of emotional distress. Further, a plaintiff may recover for his or her severe emotional distress arising due to concern for another person, *if* the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and *foreseeable* result of the defendant's negligence. *See, e.g., Bailey v. Long*, 172 N.C. 661, 90 S.E. 809; *Bowers v. Telegraph Co.*, 135 N.C. 504, 47 S.E. 597 (1904); *see also Nicholson v. Hospital*, 300 N.C. 295, 266 S.E.2d 818 (1980) (loss of consortium a natural and

foreseeable consequence of defendant's negligence and not "too remote" for recovery on a claim for loss of consortium).

In some of our prior cases we have held that a plaintiff's emotional distress ("mental anguish") arising from the plaintiff's concern for another was a natural and foreseeable consequence of the defendant's negligence and have allowed recovery on a theory of negligent infliction of emotional distress. *E.g., Hipp v. Dupont,* 182 N.C. 9, 108 S.E. 318 (1921) (wife could recover for emotional distress caused by "fearful injury of her husband" and being forced to view his "horribly mutilated condition"), *disapproved* in *Hinnant v. Power Co.,* 189 N.C. 120, 126 S.E. 307 (1925), on reasoning upon which *Hinnant* was itself *overruled* by *Nicholson v. Hospital,* 300 N.C. 295, 266 S.E.2d 818 (1980); *Bailey v. Long,* 172 N.C. 661, 90 S.E. 809 (husband's concern for wife who died due to negligence of defendant doctor and his hospital). In other cases we have concluded that a plaintiff's emotional distress arising from concern for another was not a natural and foreseeable consequence of the defendant's negligence and have denied recovery. *E.g., Benevolent Association v. Neal,* 194 N.C. 401, 139 S.E. 841 (1927) (mother's claim for her mental anguish allegedly resulting from her son's "temporary loss of sanity" due to negligence of a private mental institution rejected on the ground that her damages were "too remote" to allow recovery); *Ferebee v. R. R.,* 163 N.C. 351, 79 S.E. 685 (1913) (action brought under Federal Employers' Liability Act; mother could not recover for her concern, that her child was not yet educated, arising from the death of her husband due to defendant's negligence, as such concern not "the natural and proximate result of the injury as it affects the [mother herself] . . . ."), *aff'd,* 238 U.S. 269, 59 L. Ed. 1303 (1915).

[7] Factors to be considered on the question of foreseeability in cases such as this include the plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whose welfare the plaintiff is concerned, and whether the plaintiff personally observed the negligent act. Questions of foreseeability and proximate cause must be determined under all the facts presented, and should be resolved on a case-by-case basis by the trial court and, where appropriate, by a jury. *See Kanoy v. Hinshaw,* 273 N.C. 418, 160 S.E.2d 296 (1968); *Toone v. Adams,* 262 N.C. 403, 137 S.E.2d 132 (1964).

[8]  The plaintiffs here allege that they were the parents of the fetus which allegedly died as a result of the defendants' negligence and were in close proximity to and observed many of the events surrounding the death of the fetus and its stillbirth. We conclude that these plaintiffs may proceed with their action for severe emotional distress. If they can prove to a jury at trial that they have suffered severe emotional distress and otherwise prove the facts alleged as the basis for their claims, they are entitled to recover damages.

As we have pointed out in other cases, "Under traditional theories of tort law, defendants are liable for all of the *reasonably foreseeable* results of their negligent acts or omissions." *Azzolino v. Dingfelder*, 315 N.C. 103, 111, 337 S.E.2d 528, 534 (1985) (emphasis added) (citations omitted). "If recovery is limited to instances where it would be generally viewed as appropriate and not excessive, then, by definition, the defendant's liability is commensurate with the damage that the defendant's conduct caused. Further, the judicial system would not be overburdened by administering fair and proper claims." Comment, 33 Vill. L. Rev. at 819. Additionally, our trial courts have adequate means available to them for disposing of improper claims for negligent infliction of emotional distress and for adjusting excessive or inadequate verdicts. *E.g., Young v. Telegraph Co.*, 107 N.C. at 385-86, 11 S.E. at 1049; *see also Chappell v. Ellis*, 123 N.C. 259, 263, 31 S.E. 709, 711 (1898) (rejecting a claim for mental anguish arising from loss of property during a lawful eviction, this Court stated: "But it is urged that the principle [recovery for mental anguish] . . ., if carried out to its fullest extent, would directly lead to the recovery of damages for all kinds of mental suffering. It may be, but we feel compelled to carry out a principle only to its necessary and logical results, and not to its furthest theoretical limit, in disregard of other essential principles.").

Given the allegations in the plaintiffs' complaint, which have not yet been supported by evidence but must be taken as true for purposes of reviewing the trial court's judgment, the plaintiffs' claims against the defendants for negligent infliction of emotional distress should not have been dismissed by the trial court on the pleadings. The complaint here stated claims upon which relief could be granted to each of the plaintiff parents, because it alleged that as a foreseeable and proximate result of the defendants' negligence, each of the plaintiffs experienced the "past, present and future

**JOHNSON v. RUARK OBSTETRICS**

[327 N.C. 283 (1990)]

pain and suffering and emotional distress of enduring the labor, with the knowledge that their unborn child was dead, and the delivery of that dead child."

For the foregoing reasons, which differ from the reasoning relied upon by the Court of Appeals, the decision of the Court of Appeals, reversing the trial court's judgment for the defendants on the plaintiffs' claims for negligent infliction of emotional distress and remanding this case for further proceedings, is affirmed.

Affirmed.

Justice MEYER dissenting.

First, I wish to make clear that this action has nothing whatever to do with the separate lawsuit for the wrongful death of the fetus — that suit is alive and well and proceeding completely separate from this action and may result in substantial sums flowing to these plaintiff-parents. The negligence alleged by the Johnsons in this action refers to acts causing or permitting the death of the fetus and forms the basis for a completely separate action for emotional distress suffered by the parents. The damages alleged by Mr. and Mrs. Johnson were damages that arose after they learned of the death. Specifically, Mr. and Mrs. Johnson alleged:

> Past, present and future pain and suffering and emotional distress of *enduring the labor, with the knowledge that their unborn child was dead,* and the delivery of a dead child.

> Past, present and future mental distress and anguish resulting from the *dramatic circumstances surrounding the stillbirth of their child.*

(Emphasis added.) The Johnsons do not allege that the defendants acted negligently towards them, except insofar as the defendants' acts created serious emotional distress.

The majority sets out the three tests commonly adopted by other jurisdictions to limit bystander recovery for serious emotional distress. Each of these tests is admittedly somewhat arbitrary, but they are conscientious efforts to avoid what would otherwise become a tort-feasor's unlimited liability to any bystander suffering foreseeable serious emotional distress. Of these three, the California *Dillon* factorial approach to foreseeability is the most expansive, but even the court in *Dillon* sought "to limit the otherwise poten-

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

tially infinite liability which would follow every negligent act" through adoption of its factorial approach, *Dillon v. Legg*, 68 Cal. 2d 728, 739, 441 P.2d 912, 919, 69 Cal. Rptr. 72, 79 (1968), and has subsequently adopted even stricter limitations. Today's majority goes beyond even *Dillon's* broad approach, for it rejects the limitations on absolute foreseeability that are essential elements of the *Dillon* rule. Concluding that plaintiff may recover for his or her emotional distress arising due to concern for another person, *if* the plaintiff can prove that he or she has suffered such severe emotional distress as a proximate and *foreseeable* result of the defendant's negligence, the Court nonetheless finds it unnecessary and undesirable to attempt to state any rules to be applied as rules of law in determining when a plaintiff's evidence concerning foreseeability will be sufficient.

The majority declines to discuss in detail the development of the law outside our own borders. Instead, the majority elects to set out its broad rule of recovery without seeking guidance from the experience of other jurisdictions with less expansive doctrines of recovery.[1] Note, *Bystander Recovery: A Policy Oriented Approach*, 32 N.Y.L. Sch. L. Rev. 877 (1987); Jin Hwang, *Emotional Distress Law in Disarray*, 1987 Ann. Surv. Am. L. 475, 477-91 (1989). Even those jurisdictions most permissive in allowing recovery place limits on those bystander recoveries which are based exclusively on foreseeability. *Kelley v. Kokua Sales and Supply, Ltd.*, 56 Haw. 204, 209, 532 P.2d 673, 676 (1975) (requiring plaintiffs to be within a reasonable distance from the scene of the accident); *McLoughlin v. O'Brian*, 2 All E.R. 298, 304-05 (1982) (per Wilberforce, Lord Justice) (alleged emotional injury must come through sight or hearing of the event or its immediate aftermath; bystander must be proximate in time and space to the accident; relation to the bystander is a factor). California, that jurisdiction with the greatest experience in permitting wide latitude for recovery of serious emotional distress, has found it necessary to strictly construe the *Dillon* requirements and has in fact begun a retreat from the broad rule set out in *Dillon. Thing v. La Chusa*, 48 Cal. 3d 644, 771 P.2d 814, 257 Cal. Rptr. 865 (1989) (relating difficulties encountered after *Dillon*; establishing strict requirements of physical presence, contemporaneous awareness that the event is causing

---

1. As of 1987, twenty-one jurisdictions had adopted the *Dillon* rule or some modification thereof, while fifteen jurisdictions expressly rejected it. Jin Hwang, *Emotional Distress Law in Disarray*, 1987 Ann. Surv. Am. L. 475, 475 n.4 (1989).

injury, and close consanguine or marital relationship to the primary victim); *Elden v. Sheldon*, 46 Cal. 3d 267, 274-76, 758 P.2d 582, 586-88, 250 Cal. Rptr. 254, 258-60 (1988) (denial of recovery by live-in lover due to: state interest in promoting marriage, potential burden on courts, and need to limit defendant liability); Comment, *A New Tort in California: Negligent Infliction of Emotional Distress (For Married Couples Only)*, 41 Hastings L.J. 447 (1990). The majority fails to heed the difficulties faced by earlier pioneers of this tort.

Under the majority formulation, a defendant has a duty not to cause serious emotional distress in any person who might foreseeably suffer such distress from proximate negligence. This duty is limited only by the foreseeability that such harm may occur. The majority lists several "factors" to be considered on the question of foreseeable harm. Those factors — a plaintiff's proximity to the negligent act, the relationship between the plaintiff and the other person for whom the plaintiff is concerned, and whether the plaintiff personally observed the negligent act — are indicia that tend to establish foreseeability. Because the majority does not make these factors determinative of the foreseeability of a bystander's emotional distress, there is no real limitation on foreseeability. But as California has noted, with apologies to Bernard Witkin, "there are clear judicial days on which a court can foresee forever." *Thing v. La Chusa*, 48 Cal. 3d at 668, 771 P.2d at 830, 257 Cal. Rptr. at 881.

The majority undertakes no analysis of how negligent acts causing lost viability of the fetus create a duty flowing to the mother, nor is there analysis of how the duty flows to the father, who never alleges any duty existed except to avoid inflicting serious emotional distress. The majority assumes a duty exists because the fetus lost viability and the Johnsons suffered the pain of the loss and the despair of a childless labor. Compare this treatment of duty to that of *Tebbutt v. Virostek*, 65 N.Y.2d 931, 483 N.E.2d 1142, 493 N.Y.S.2d 1010 (1985) (memorandum), in which the New York court denied recovery for serious emotional distress arising from death of a fetus due to a negligently performed amniocentesis on the basis that there was no duty flowing to the plaintiff-parents from the defendant-physician. *See also Vaillancourt v. Medical Ctr. Hosp. of Vt.*, 139 Vt. 138, 425 A.2d 92 (1980) (denying recovery for emotional distress of parents witnessing negligent act resulting in death of fetus, as parents not within zone of danger; therefore, no duty owed them).

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

That the foreseeability and proximate cause requirements as set out by the majority are low hurdles indeed is readily apparent. I assume that by distinguishing between fright and serious emotional distress, the majority is drawing a distinction similar to that between a primary response to a traumatic event and a secondary response.[2] *See, e.g., Leong v. Takasaki*, 55 Haw. 398, 411-12, 520 P.2d 758, 766-67 (1974). Medicine identifies at least three diagnosable serious secondary responses to traumatic events: anxiety reaction, conversion reaction, and hypochondriasis. *Id.* at 412, 520 P.2d at 767. The prevalence of these disorders is "common." *Diagnostic and Statistical Manual of Mental Disorders* at 235-53, 257-67 (3d rev. ed. 1987). It would appear that serious emotional distress arising from a traumatic event is a statistical likelihood in any bystander exposed to the negligently created traumatic event. Thus, the majority's entry requirement that the injury be severe ("severe emotional distress" meaning, "for example," neurosis, psychosis, chronic depression, phobias, and other types "generally recognized by professionals") is a totally ineffective barrier.

Foresight alone does not provide a socially and judicially acceptable limitation on recovery of damages for negligent infliction of emotional distress. *Thing v. La Chusa*, 48 Cal. 3d at 668, 771 P.2d at 830, 257 Cal. Rptr. at 881. The majority establishes no limit to foreseeability with its list of factors. The majority makes some reference that the relationship between the bystander and the primary victim (parent, spouse, sibling, grandparent, cousin, etc.) may be of some help in determining foreseeability. However, there is no real limitation to the class of foreseeable plaintiffs on this basis. Even the most liberal jurisdictions have a relationship requirement for the class of persons who can recover for the tort.

Nor does the majority's analysis address, in the overall context of the tort, any requirement of proximity to the alleged negligent acts. Many courts make this an important consideration in automobile injury or death cases. *See, e.g., Thing v. La Chusa*, 48 Cal. 3d 644, 669, 771 P.2d 814, 830, 257 Cal. Rptr. 865, 881 (recovery denied

---

2. "The primary response, an[] immediate, automatic and instinctive response designed to protect an individual from harm, unpleasantness and stress aroused by witnessing the painful death of a loved one, is exemplified by emotional responses such as fear, anger, grief, and shock." *Leong v. Takasaki*, 55 Haw. 398, 411-12, 520 P.2d 758, 766 (1974). A secondary response is a longer lasting reaction "caused by an individual's continued inability to cope adequately with a traumatic event." *Id.* at 412, 520 P.2d at 767.

**JOHNSON v. RUARK OBSTETRICS**

[327 N.C. 283 (1990)]

to mother who was neither present at scene of accident nor aware that son was being injured); *Wright v. City of Los Angeles*, 219 Cal. App. 3d ---, ---, 268 Cal. Rptr. 309, 329 (1990) (plaintiffs must be on the scene and "*then* aware [that decedent] was being injured by [the tort-feasor's] negligent conduct"); *Kelley v. Kokua Sales and Supply, Ltd.*, 56 Haw. 204, 209, 532 P.2d 673, 676 (physical proximity to scene of tort is determining factor); *Wilder v. City of Keene*, 131 N.H. 599, 604, 557 A.2d 636, 639 (1989) (recovery denied to parents who neither saw nor heard collision); *Burris v. Grange Mutual Cos.*, 46 Ohio St. 3d 84, 93, 545 N.E.2d 83, 91 (1989) (recovery denied to parent who had "no sensory perception of the events surrounding the accident"); *Gain v. Carroll Mill Co.*, 114 Wash. 2d 254, ---, 787 P.2d 553, 557 (1990) (plaintiff required to be "present at the scene of the accident and/or arrive shortly thereafter").

Any considered opinion adopting a strict foreseeability approach without establishing *limits* on the class of bystander plaintiff, the type of primary injury creating the distress, and the proximity of perception cries out for an exploration of the foreseeable implications.

Does the majority give equal causes of action for the grieving mother and the family friend? Is it just as surely foreseeable that grandparents, siblings, other relatives, and close friends may also suffer demonstrably serious emotional distress? "Cases involving relational interests pose difficult problems with respect to mental anguish claims . . . . Under these circumstances the fear of an indefinite liability is a legitimate one, and the need to impose reasonable limits upon the extent of a defendant's responsibility clearly exists." Byrd, *Recovery for Mental Anguish in North Carolina*, 58 N.C.L. Rev. 435, 448 (1980).

Liability without limitation adversely affects three distinct groups: tort-feasors, the physically injured primary and secondary victims, and society as a whole. As described earlier, the universe of plaintiffs contemplated by the majority's rule is infinite indeed.

It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends.

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

Prosser and Keeton on The Law of Torts § 54, at 366 (5th ed. 1984). "If recovery is to be permitted, . . . it is . . . clear that there must be some limitation." *Id.* Though the purpose of tort law is to right wrongs negligently committed, prior to this decision it has not been the policy of this jurisdiction to extend an infinite responsibility to everyone who has suffered. *See generally* Byrd, *Recovery for Mental Anguish in North Carolina*, 58 N.C.L. Rev. 435 (1980).

That the law can retard as well as promote social and economic development is very nearly axiomatic. H. deSoto, *The Other Path* at 177-87 (1989). Virtually all conduct is risk creating. Recognizing this, "the decision must be made concerning the quality of the risks toward plaintiff that the defendant created by his conduct." Thode, *Tort Analysis: Duty-Risk v. Proximate Cause and the Rational Allocation of Functions Between Judge and Jury*, 1977 Utah L. Rev. 1, 8 (1977). Learned Hand proposed his famous cost-benefit equation in an effort to distinguish between risks which were worth taking and those which were not. *United States v. Carroll Towing Co.*, 159 F.2d 169, *reh'g denied*, 160 F.2d 482 (2d Cir. 1947).[3] Today's decision, drawing no such distinction, stands for the proposition that no risk of serious emotional distress is acceptable. The impact of this rule on the availability of medical care, particularly that of obstetrics, will be to further discourage qualified physicians from practicing. The risk of liability and the escalated premium for insurance to cover the liability are already seriously affecting the delivery of obstetrical care in this state, particularly to the rural areas and to the poor. With the addition of this new layer of liability to bystanders, that problem will be seriously exacerbated. I cannot think that our state will benefit from a rule that discourages such risk-taking activity without regard to the costs society might pay or the benefits society might derive therefrom.

If there be any limitations whatsoever on this duty not to negligently inflict foreseeable serious emotional distress, the nonexclusive list of factors recited by the majority which may be "considered" does not establish them. In adopting a rule, it should

---

3. Hand described the duty of an actor to protect against resulting injuries as being a function of three variables: (1) the probability $(P)$ of injury occurring, (2) the gravity $(L)$ of resulting injury, and (3) the burden $(B)$ of adequate precautions. Hand described this relationship algebraically as an inquiry as to whether $B < PL$. *United States v. Carroll Towing Co.*, 159 F.2d at 173.

## JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

not be so vague that it provides no guidance to the judges and juries that must implement it. "When making a decision under a rule that provides little or no guidance, decision makers will inevitably decide upon whatever basis seems important to them." Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules*, 34 U. Fla. L. Rev. 477, 483 (1982). Professor Pearson's description of the difficulty of implementing vague rules precisely describes California's twenty-year struggle with the *Dillon* rule.

From this analysis of case law from jurisdictions that have introduced a more restrictive version of the foreseeability rule adopted today, I conclude that the majority sets out on an unwise course. Though it adopts foreseeability as its polestar, the majority fails to use that guide in formulating its rule. I must dissent from the overbroad rule adopted today.

An alternative proposal would be to place limitations on the definition of "foreseeability" based upon the relationship of the plaintiff, the proximity of perception, and the severity of the injury that would give rise to a bystander's cause of action for serious emotional distress. For limitations on foreseeability based on plaintiff's relationship to the victim, *see, e.g., Thing v. La Chusa*, 48 Cal. 3d 644, 667-68, 771 P.2d 814, 829-30, 257 Cal. Rptr. 865, 880 (mother of victim is "closely related"); *Elden v. Sheldon*, 46 Cal. 3d 267, 273, 758 P.2d 582, 587, 250 Cal. Rptr. 254, 258 (unmarried cohabitant denied recovery); *Dillon v. Legg*, 68 Cal. 2d 728, 741, 441 P.2d 912, 920, 69 Cal. Rptr. 72, 80 (mother of victim is "closely related"); *Quesada v. Oak Hill Improvement Co.*, 213 Cal. App. 3d 596, ---, 261 Cal. Rptr. 769, 778, *rev. denied*, Nov. 16, 1989 (niece given opportunity to prove sufficiently close relationship). For limitations on foreseeability based on the proximity of perception, *see, e.g., Thing v. La Chusa*, 48 Cal. 3d 644, 669, 771 P.2d 814, 830, 257 Cal. Rptr. 865, 881 (recovery denied to mother who was neither present at scene of accident nor aware that son was being injured); *Wright v. City of Los Angeles*, 219 Cal. App. 3d ---, ---, 268 Cal. Rptr. 309, 329 (plaintiffs must be on the scene and "*then* aware [that decedent] was being injured by [the tortfeasor's] negligent conduct"); *Kelley v. Kokua Sales and Supply, Ltd.*, 56 Haw. 204, 209, 532 P.2d 673, 676 (physical proximity to scene of tort is determining factor); *Wilder v. City of Keene*, 131 N.H. 599, 604, 557 A.2d 636, 639 (recovery denied to parents who neither saw nor heard collision); *Burris v. Grange Mutual Cos.*,

46 Ohio St. 3d 84, 93, 545 N.E.2d 83, 91 (recovery denied to parent who had "no sensory perception of the events surrounding the accident"); *Gain v. Carroll Mill Co.*, 114 Wash. 2d 254, ---, 787 P.2d 553, 557 (plaintiff required to be "present at the scene of the accident and/or arrive shortly thereafter"). For limitations on foreseeability based on the severity of the injury to the bystander, *see, e.g., Thing v. La Chusa*, 48 Cal. 3d 644, 668, 771 P.2d 814, 829-30, 257 Cal. Rptr. 865, 880-81 ("serious emotional distress" required as a limitation on recovery); *Lejeune v. Rayne Branch Hospital*, 556 So. 2d 559, 570 (La. 1990) (emotional distress must be both severe and debilitating for recovery). This has been the preferred approach by the considered opinions of those jurisdictions extending liability to bystanders. *See, e.g., Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983); *Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986); Note, *Bystander Recovery: A Policy Oriented Approach*, 32 N.Y.L. Sch. L. Rev. 877 (1987).

The New Mexico court has limited claims to those with a "marital, or intimate familial relationship between the victim and the plaintiff, limited to husband and wife, parent and child, grandparent and grandchild, brother and sister and to those persons who occupy a legitimate position in loco parentis." *Ramirez v. Armstrong*, 100 N.M. at 541, 673 P.2d at 825. Unfortunately, I have failed to convince my brethren that this Court should do the same.

This Court's expansion of tort liability for emotional distress raises other troubling questions when one considers the possibility of inconsistent verdicts and double recoveries for the same loss. In the case at hand, should a recovery by the prospective parents be permitted if another jury allows no recovery in the wrongful death action based upon the same acts of negligence? If the pending wrongful death claim of Glenn W. Johnson (plaintiff here, administrator in the companion case) is successful, despite admonitions to the contrary, that jury is likely to factor in a compensation to the plaintiff for his emotional distress in his capacity as father, a major element of plaintiff's claim in this case. The jury in this negligent infliction of emotional distress case, being unaware of the action of the jury in the other case, will also award damages for the emotional distress suffered by Glenn W. Johnson as the father. These dangers will exist whenever the intentional infliction of emotional distress is tried separate and apart from the wrongful death action. Perhaps consideration should be given to requiring

that such claims be tried in the same action. *See Crump v. Bd. of Education*, 326 N.C. 603, 629-30, 392 S.E.2d 579, 593-94 (1990) (Meyer, J., dissenting).

Finally, I share my brother Webb's skepticism that the majority indeed reflects "the overwhelming weight of this Court's opinions for the past one hundred years" in an opinion effectively overruling *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), and *Williamson v. Bennett*, 251 N.C. 498, 112 S.E.2d 48 (1960); and openly overruling *Edwards v. Advo Systems, Inc.*, 93 N.C. App. 154, 376 S.E.2d 765 (1989); *Ledford v. Martin*, 87 N.C. App. 88, 359 S.E.2d 505 (1987), *disc. rev. denied*, 321 N.C. 473, 365 S.E.2d 1 (1988); *Campbell v. Pitt County Memorial Hosp.*, 84 N.C. App. 314, 352 S.E.2d 902, *aff'd on other grounds*, 321 N.C. 260, 362 S.E.2d 273 (1987); *Woodell v. Pinehurst Surgical Clinic, P.A.*, 78 N.C. App. 230, 336 S.E.2d 716 (1985), *aff'd per curiam*, 316 N.C. 550, 342 S.E.2d 523 (1986); *Craven v. Chambers*, 56 N.C. App. 151, 287 S.E.2d 905 (1982); *Wesley v. Greyhound Lines, Inc.*, 47 N.C. App. 680, 268 S.E.2d 855 (1980); and *McDowell v. Davis*, 33 N.C. App. 529, 235 S.E.2d 896, *disc. rev. denied*, 293 N.C. 360, 237 S.E.2d 848 (1977). To arrive at this characterization, the majority is forced to conclude that our cases contain unfortunate and erroneous misstatements. The majority says that "some writers" have "miscategorized" the law of North Carolina in this area, though in categorizing the law of other states these same commentators "are likely correct" in their analyses. The majority states further that "our courts" have made "misstatements" of law and that "our courts" have used "inconsistent analyses" and have thereby "buttressed" "misconceptions" as to our law. The majority opinion is exceedingly (and in my view unnecessarily) critical of the care this Court has previously exercised in this area. Besides being inaccurate, these statements do nothing to instill confidence in this Court's opinions.

The majority has neglected to overrule or otherwise treat other cases containing "unfortunate" language similar to that which it has determined goes against "the overwhelming weight of this Court's opinions." In *Arthur v. Henry*, 157 N.C. 438, 73 S.E. 211 (1911), this Court stated that a plaintiff could recover for emotional distress if the jury found that "she was put in fear and frightened to such an extent that she suffered *physical pain*" as a result of debris propelled through the house in which she was living by negligent blasting. *Id.* at 439, 73 S.E. at 212 (emphasis added).

JOHNSON v. RUARK OBSTETRICS

[327 N.C. 283 (1990)]

The Court noted with approval that the trial judge "was careful to exclude the idea that the plaintiff could recover for fright unaccompanied by physical injury." *Id.* In *Kirby v. Stores Corp.*, 210 N.C. 808, 812, 188 S.E. 625, 627 (1936), we stated, " '[a]s a general rule, damages for mere fright are not recoverable; but they may be recovered where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment.' " *Id.* (quoting *Candler v. Smith*, 50 Ga. App. 667, 673, 179 S.E. 395, 399 (1935) ). We made the same statement in 1937 in the case of *Sparks v. Products Corp.*, 212 N.C. 211, 213-14, 193 S.E. 31, 33 (1937). *See also Slaughter v. Slaughter*, 264 N.C. 732, 735, 142 S.E.2d 683, 686 (1965).

In *Crews v. Finance Company*, 271 N.C. 684, 689, 157 S.E.2d 381, 385 (1967), we find more of this "unfortunate" language. We held in *Crews* that "angina and increased blood pressure constituted physical injury" so as to survive the defendant's motion for involuntary nonsuit and to require the case to be submitted to the jury. *Id.* at 690, 157 S.E.2d at 386.

The majority mischaracterizes as dicta the holding in *Williamson v. Bennett*, 251 N.C. at 503, 112 S.E.2d at 52, that "recovery may be had for mental or emotional disturbance in ordinary negligence cases where, coincident in time and place with the occurrence producing the mental stress, some actual physical impact or genuine physical injury also resulted directly from defendant's negligence." This Court denied recovery in that case because it was a case of "fright, anxiety and other emotional stress, *unaccompanied by actual physical injury.*" *Id.* at 507, 112 S.E.2d at 54 (emphasis added). It is apparent that even if the the majority is correct in stating that "our earlier cases did not require any physical impact or injury," a point which I do not concede, physical impact or injury became generally accepted as a requirement and was applied as such in those very cases the majority finds necessary to overrule as well as in cases it neglects to mention.

Our cases have consistently denied bystander recovery for the mental anguish of a parent over the negligently caused death or injury of a child. *Benevolent Association v. Neal*, 194 N.C. 401, 139 S.E. 841 (1927) (injury); *Croom v. Murphy*, 179 N.C. 393, 102 S.E. 706 (1920) (death); *Ballinger v. Rader*, 153 N.C. 488, 69 S.E. 497 (1910) (death). This Court has allowed no recovery for mental

suffering caused by injury to a spouse by means other than aliena-
tion of affections or criminal conversation. *Craig v. Lumber Co.*,
189 N.C. 137, 126 S.E. 312 (1925) (denying wife's recovery for grief
and pain where husband died instantaneously); *Cottle v. Johnson*,
179 N.C. 426, 102 S.E. 769 (1920) (criminal conversation and aliena-
tion of affections); *Powell v. Strickland*, 163 N.C. 393, 79 S.E. 872
(1913) (criminal conversation). In *Ferebee v. R.R.*, 163 N.C. 351,
79 S.E. 685 (1913), *aff'd*, 238 U.S. 269, 59 L. Ed. 1303 (1915), this
Court denied recovery for mental suffering resulting from concern
for plaintiff's wife and child. *Id.* at 354-55, 79 S.E. at 686-87.

The majority cites *Hipp v. Dupont*, 182 N.C. 9, 108 S.E. 318
(1921), for the proposition that our jurisdiction permits bystander
recovery for the negligent infliction of serious emotional distress.
The majority neglects to mention that the plaintiff in that case
alleged *physical*, as well as mental, injuries arising from the alleged
acts of negligence directed at her husband. *Id. Hipp* stands for
no more than the established rule of our jurisdiction that mental
injury is actionable where there is a physical manifestation of harm.

This very brief examination of North Carolina law indicates
that a rule permitting recovery for *all* foreseeable serious emotional
distress arising from negligence is not a statement of the over-
whelming authority of this state. Rather, the rule of this state
has been to require physical manifestation of injury or physical
impact in order to distinguish claims for *fright*, which the majority
concedes is not actionable. I cannot agree with the majority's reading
of current North Carolina law.

I would think that the more considered approach to the prob-
lem raised by the Johnsons' complaint would be to create a special
exception to the general rule denying recovery for emotional distress
of a bystander not suffering physical manifestations or a physical
impact. This exception would permit recovery for the serious emo-
tional distress suffered by a mother as a result of a stillbirth
caused by negligence. Such a special category would be similar
to those already established in our case law. For example, we
have allowed recovery without regard to any bodily injury for
mental distress which results from the negligent transmission of
important telegraphic messages. *Russ v. Telegraph Co.*, 222 N.C.
504, 23 S.E.2d 681 (1943) (late delivery of death message); *Green
v. Telegraph Co.*, 136 N.C. 489, 49 S.E. 165 (1904) (failure to properly
deliver message of arrival); *Meadows v. Telegraph Co.*, 132 N.C.

40, 43 S.E. 512 (1903) (late delivery of sickness message); *Young v. Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890) (late delivery of sickness message). Additionally, this Court has allowed recovery, absent physical injury, for the negligent handling of a dead relative's corpse. *Morrow v. R.R.*, 213 N.C. 127, 195 S.E. 383 (1938) (mutilation of dead body); *Bonaparte v. Funeral Home*, 206 N.C. 652, 175 S.E. 137 (1934) (husband's body withheld from wife to induce payment for embalming services). In *Kirby v. Stores Corp.*, 210 N.C. 808, 188 S.E. 625, defendant's bill collector sat in his parked car about fifteen feet away from plaintiff and repeated threats to get the sheriff and have plaintiff arrested if she did not pay her bills. Plaintiff alleged that the trauma of this event caused her to suffer a miscarriage, and this Court affirmed the jury verdict in her favor. A subsequent case affirmed this approach where there was a miscarriage. *Martin v. Spencer*, 221 N.C. 28, 30, 18 S.E.2d 703, 703 (1942). Such an exception as may be appropriate here has been the preferred approach of a significant number of sister states and commentators. *See, e.g., Tebbutt v. Virostek*, 65 N.Y.2d at 936, 483 N.E.2d at 1146, 493 N.Y.S.2d at 1014 (Jasen, J., dissenting) (citing numerous cases and authorities); *Naccash v. Burger*, 223 Va. 406, 416, 290 S.E.2d 825, 831 (1982). Our cases suggest that this is the proper manner in solving the problem posed today.

Justice WEBB dissenting.

I dissent. The majority, in order to reach the result it has reached, says it has followed "the overwhelming weight of this Court's opinions for the past one hundred years." In applying this "overwhelming weight" of authority the majority has found it necessary to overrule *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307 (1925), and seven cases decided by the Court of Appeals. I do not believe the Court of Appeals has been wrong in the way it has interpreted our cases.

I believe the cases relied on by the majority show that in some earlier cases we held that negligent infliction of emotional distress without showing more was actionable. These cases involved principally the negligent delivery of telegrams and the negligent burial of bodies. *Morrow v. R.R.*, 213 N.C. 127, 195 S.E. 383 (1938); *Young v. Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890). As the law developed we held that there must be some impact or physical injury accompanying the negligent act to support a claim. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611; *Williamson*

*v. Bennett*, 251 N.C. 498, 112 S.E.2d 48; *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307; *Kimberly v. Howland*, 143 N.C. 399, 55 S.E. 778 (1906); Byrd, *Recovery For Mental Anguish In North Carolina*, 58 N.C. L. Rev. at 457. We have now overruled or disapproved these cases, which I do not think we should do. The rule we have followed is somewhat arbitrary but it is based on the policy that there must be some limit to the liability of a negligent person. I would hold that Glenn W. Johnson and Barbara K. Johnson have not stated claims.