JAMES McDOWELL AND MARY McDOWELL v. MARVIN DAVIS, IN-
DIVIDUALLY AND AS SHERIFF OF DURHAM COUNTY, NORTH CAROLINA;
J. R. COATS, INDIVIDUALLY AND AS A DEPUTY SHERIFF OF DURHAM
COUNTY, NORTH CAROLINA; J. M. CRABTREE, INDIVIDUALLY AND AS
A DEPUTY SHERIFF OF DURHAM COUNTY, NORTH CAROLINA; UNITED
STATES FIRE INSURANCE COMPANY

No. 7614DC938

(Filed 6 July 1977)

1. **Constitutional Law § 17; Ejectment § 5; Sheriffs and Constables § 4—
ejectment of plaintiffs — action under Civil Rights Act**

The sheriff's eviction of plaintiffs from a municipal housing
project pursuant to an order of ejectment did not constitute a viola-
tion of plaintiffs' Fourth Amendment rights so as to subject the sher-
iff to a claim for damages under 42 U.S.C. § 1983, even assuming that
the sheriff had a policy and agreement with the housing authority
for the unofficial cancellation of ejectment orders and the housing
authority notified the sheriff to cancel execution of the ejectment
order against plaintiffs, since a violation of an unofficial and in-
formal agreement or policy between the sheriff and the holder of an
ejectment judgment was at most a breach of the duty to exercise ordi-
nary care and did not divest the sheriff of authority to execute a
valid judicial order.

2. **Damages § 3.4— mental distress — necessity for physical impact or
injury**

Plaintiffs showed no right to damages because of the negligence
of defendants, a sheriff and his deputies, in the execution of an eject-
ment order where there was no evidence of any physical injury to
plaintiffs' property or persons and the only evidence with respect to
damages related to humiliation, embarrassment and emotional distress
resulting from negligence of defendants, since there can be no recov-
ery for emotional or mental stress in an ordinary negligence case
unless it is shown that the mental stress was the proximate result
of some physical impact or physical injury resulting from negligence.

APPEAL by plaintiffs from *Moore, Judge.* Judgment entered
14 May 1976 in District Court, DURHAM County. Heard in the
Court of Appeals 8 June 1977.

The allegations of plaintiffs' complaint, except where
quoted, are summarized as follows:

Plaintiffs, James and Mary McDowell, were tenants of
Durham Housing Authority (DHA), they became delinquent in
the payment of their rent, and on 16 May 1974, DHA obtained
an order of ejectment which was served on them on 20 June
1974. DHA "agreed to withhold execution on the judgment pro-

vided the plaintiffs made up the rent arrearages by payment of
$50 per week until the back rent was paid." On 23 June 1974,
DHA "twice gave direct, personal notification to defendant
Davis that the judgment of eviction against the McDowells was
not to be executed on." Plaintiffs complied with their agree-
ment with DHA, and DHA did not revoke its instructions to
defendant Davis not to execute on the judgment, but neverthe-
less defendants J. R. Coats and J. M. Crabtree executed on the
ejectment order and removed the McDowells and their belong-
ings from their home. Defendants Coats and Crabtree with the
assistance of inmates of the Durham County jail removed
"plaintiffs' belongings in such a rough and grossly insensitive
and culpably negligent manner that the McDowells' furniture,
theretofore almost new and in good condition, was severely dam-
aged in the amount of approximately $1,000." The eviction
"made a public spectacle of plaintiffs, causing them shame,
embarrassment, humiliation and mental anguish." The actions
of defendants Davis, Coats, and Crabtree violated plaintiffs'
rights under the Fourth and Fourteenth Amendments of the
United States Constitution, established an "arbitrary, reckless
and grossly negligent" breach of their duty "to exercise ordi-
nary care in determining the need for and legality of the eject-
ment and in conducting that ejectment," and established a
breach of defendant Davis' public official's bond that he shall
"well and faithfully perform all and singular the duties incum-
bent upon him by reason of his election." Plaintiffs made the
following prayer for relief:

"A. Against defendants Davis, Coates, [sic] Crabtree
and United States Fire Insurance Company:

(1) $1,000 actual damages for the shame, humili-
ation and mental anguish;

(2) $1,300 actual damages for the destruction
and damage to plaintiffs' belongings and to their
home;

resulting from the wrongful ejection;

B. Against defendants Davis, Coates [sic] and Crab-
tree; $1,500 punitive damages for the wrongful ejection.

C. Against defendant Davis: $500 actual damages and
$500 punitive damages for the tortious assault and vilifi-
cation.

---

McDowell v. Davis

---

D. The costs and disbursements of this action.

E. Such other and further relief as to the court may seem just."

Defendants filed answer denying the material allegations of the complaint.

The evidence presented by plaintiffs at trial is summarized as follows:

One of the duties of defendant Davis as Sheriff of Durham County is to evict tenants under orders of execution and ejectment. The "operating policy" of the sheriff's office is to cancel an order of ejectment if the landlord, including DHA, calls the sheriff's office and requests that it be cancelled. No modification or setting aside of the execution order by the clerk of superior court is required. The sheriff's office also has a policy of not executing orders of ejectment until the landlord is contacted to see if arrangements with the tenant have been made. Orders of ejectment are normally executed on within three days after service upon the tenant.

In May 1974 DHA obtained an order of ejectment against plaintiffs. The plaintiffs made an agreement with Jacqueline Macon of DHA on 19 June 1974 that they would pay $50 per week until the rent in arrears was paid. The agreement was communicated to Gwendolyn Hartley, Director of Management at DHA, who stated she would cancel the ejectment notice. The order of ejectment was served on Mr. McDowell on 20 June 1974. Gwendolyn Hartley testified, "By referring to plaintiffs' Exhibit 9 which is the judgment in the case of *Durham Housing Authority v. McDowell* I can see that I wrote on my copy 'cancelled' with the date June 23, 1974. Based on my usual policy, that would be the date that I would cancel the eviction with the sheriff's office." Plaintiffs introduced into evidence a memorandum prepared by Mrs. Hartley on 19 July 1974 which she testified "represents the correct facts as they were in my memory on July 19, 1974 . . . . " In that memorandum she stated, "On June 23, 1974, I called the Sheriff's Department and indicated that the execution of the judgment against Mr. McDowell should be cancelled. I do not remember to whom I spoke."

J. R. Coats, Durham County Deputy Sheriff, was given the order of ejectment against the plaintiffs on 16 July 1974.

Coats knew that he was to check with DHA to determine if he was to serve the writ of execution, and that "the only one who'd give a definite answer as to whether [he] should go ahead with a DHA ejectment was Mrs. Hartley." Deputy Coats tried unsuccessfully eight times to reach Mrs. Hartley by phone. Finally on his last call he was told by someone at DHA to evict plaintiffs. Coats obtained a key from the maintenance man on the project, and he along with Deputy Crabtree and three inmates of the county jail began removing the McDowell's belongings from the house. While in the process of evicting the plaintiffs a representative of DHA arrived and stopped the eviction. The deputies and inmates left without returning the belongings to the house. Personnel of DHA returned the property to the house. Subsequently plaintiffs moved out of the project because their children were distressed and upset by the taunts of the other children in the project about having been evicted. Plaintiffs were very embarrassed about the incident.

Defendants offered evidence tending to show the following:

DHA obtained so many eviction orders against its tenants, most of which were subsequently cancelled, that a special arrangement for cancellation was set up whereby Mrs. Hartley at DHA was to call Chief Deputy William Allen personally to cancel the order. However, subsequent to the arrangement DHA cancelled numerous eviction orders, and Mrs. Hartley called Deputy Allen on just one of those occasions. On one of his calls to DHA Deputy Coats was told by someone at DHA that they would check to see if the McDowells should be evicted and would let him know what to do when he called back. Upon his next call he was "switched several times to different people" and was finally told by someone to evict the plaintiffs. None of plaintiffs' furniture and belongings was damaged during the eviction.

The following issues were presented to the jury and answered as indicated:

"1. Did Durham Housing Authority properly request the sheriff to cancel the execution against the eviction order prior to the sheriff removing such furniture?

ANSWER: Yes.

2. In removing furniture, did sheriff, through his agents, negligently damage plaintiffs' property?

ANSWER: No.

3. If you find sheriff to be negligent, was such negligence in wanton and willful disregard of his authority?

ANSWER: No.

4(a). What amount of damages are the plaintiffs entitled to recover by reason of negligence in Issue No. 2?

ANSWER: No.

(b). What amount of punitive damages are plaintiffs entitled to recover by reason of the willful and wanton negligence in Issue No. 3?

ANSWER: No."

From a judgment that they recover nothing from the defendants, plaintiffs appealed.

*Legal Aid Society of Durham County by Denison Ray and Adrienne M. Fox for plaintiff appellants.*

*Robert D. Holleman and Felix B. Clayton for defendant appellees.*


HEDRICK, Judge.

[1] One of plaintiffs' claims is based upon 42 U.S.C. § 1983 which provides,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Plaintiffs contend that at trial they introduced sufficient evidence to support a jury verdict that defendants violated their Fourth Amendment right "to be secure in their persons, houses, papers, and affects against unreasonable searches and seizures . . . , " and that they are entitled to compensation for the humiliation and embarrassment resulting from this violation irrespective of any damage done to their belongings.

If plaintiffs are correct in their contention that they presented sufficient evidence at trial of a violation of their constitutional rights, then they need not show any property damage to recover compensation for such harm as humiliation and embarrassment resulting from the violation of their constitutional rights. *Hostrop v. Board of Junior College Dist. No. 515*, 523 F. 2d 569 (7th Cir. 1975), *cert. denied*, 425 U.S. 963, 48 L.Ed. 2d 208, 96 S.Ct. 1748 (1976); *Piphus v. Carey*, 545 F. 2d 30 (7th Cir. 1976).

"The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.'" *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 26 L.Ed. 2d 142, 150, 90 S.Ct. 1598, 1604 (1970).

In the present case the evidence is clearly sufficient to support a finding by the jury that the defendants in executing the eviction order were acting "under color of law."

A determination of whether there has been such a violation by defendants of plaintiffs' Fourth Amendment right against unreasonable search and seizure as to be actionable under § 1983 begins with *Monroe v. Pape*, 365 U.S. 167, 5 L.Ed. 2d 492, 81 S.Ct. 473 (1961). In that case the Supreme Court held that plaintiffs, a husband, wife and their children, could maintain an action under § 1983 against Chicago policemen, who allegedly broke into their home, searched it without a warrant, and arrested and detained the husband without a warrant and without arraignment. The court pointed out that § 1983 was designed to give a remedy to parties deprived of their constitutional rights by an official's misuse or abuse of his authority. The court also pointed out that § 1983 does *not* require that a plaintiff show that the defendant had "a specific intent to deprive a person of a federal right." 365 U.S. at 187. Instead, "[§ 1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Id.*

McDowell v. Davis

The Federal Circuit Courts have followed this Supreme Court mandate to apply § 1983 "against the background of tort liability that makes a man responsible for the natural consequences of his actions." For example in *Jenkins v. Averett*, 424 F. 2d 1228 (4th Cir. 1970), the Fourth Circuit held that a plaintiff could maintain a § 1983 action against a police officer, who was "grossly and culpably negligent" in shooting him. The District Court had denied plaintiff relief under § 1983, accepting defendant's claim that he did not intend to shoot the plaintiff as a defense. The Fourth Circuit reversed, stating that "if intent is required, it may be supplied, for federal purposes, by gross and culpable negligence, just as it was supplied in the common law cause of action, [assault]." *Id.* at 1232. In *Bryan v. Jones*, 530 F. 2d 1210 (5th Cir. 1976), the defendant-sheriff continued to keep plaintiff imprisoned in reliance upon a typographical error in a grand jury report after he should have been released. The Fifth Circuit held that plaintiff had made out a *prima facie* case under § 1983 since a *prima facie* case of false imprisonment at common law had been shown. The Court stated,

> "The elements of the prima facie case are: (1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm. Restatement, Second, Torts § 35 (1965). Thus, a prima facie case is made out against a jailer even when he believes he has legal authority to detain a prisoner." *Id.* at 1213.

The common law analogues for plaintiffs' present § 1983 suit are actions for the intentional torts of trespass to land and chattels. See 59 Minn. L. Rev. 991, 991-997 (1975). At common law a person need not have the intent to trespass in order to be liable for trespass. To be liable for trespass a person need only intentionally go upon the land in the possession of another, when not privileged or authorized to do so. *Matthews v. Forrest*, 235 N.C. 281, 69 S.E. 2d 553 (1952); Restatement (Second) of Torts § 158 (1965); Dobbs, Trespass to Land in North Carolina, 47 N.C. L. Rev. 31 (1968). To be liable for trespass to chattel, he need only intentionally dispossess the chattel of another or intermeddle with the chattel of another, when not privileged or authorized to do so. Restatement (Second) of Torts § 217. However, an officer is privileged when he evicts a person pursuant

to a valid order of the court. Restatement (Second) of Torts § 210 provides:

> "The privilege to execute an order of a court directing the actor to put a third person in possession of land of which another is in possession, or to do any other act on the land, carries with it the privilege to enter the land for the purpose of executing the order, provided that any writ issued for the execution of the order is valid or fair on its face."

In the present case plaintiffs concede that the ejectment order in the hands of the sheriff was in all respects proper. They insist, however, that because the sheriff and his deputies executed the order in violation of their agreement and policy with DHA, the defendants are liable in damages pursuant to the provisions of § 1983.

Assuming *arguendo* that the evidence is sufficient to support findings by the jury that the sheriff had a policy and agreement with DHA for the unofficial cancellation of ejectment orders, and that DHA "properly requested the sheriff to cancel the execution against the eviction order," as the jury did in fact find, we are of the opinion that such findings will not support a conclusion that defendants, or either of them, violated plaintiffs' constitutional rights within the meaning of § 1983. A violation of such an unofficial and informal agreement or policy as shown here between the sheriff and the holder of an ejectment judgment is at most a breach of defendants' duties to exercise ordinary care, and does not divest the defendants of their authority to execute a valid judicial order. Thus, we are of the opinion that the trial judge did not err in not submitting to the jury an issue of damages for defendants' alleged violation of plaintiffs' constitutional rights within the meaning of § 1983.

[2] Plaintiffs remaining assignments of error relate to the issues submitted to the jury and instructions thereon with respect to their claim for damages as a result of defendants' alleged negligence in executing the order of ejectment. There is no evidence in the record before us of any damage to plaintiffs' property or person. The only evidence with respect to damages relates to alleged humiliation, embarrassment, and emotional distress resulting from defendants' negligence.

"Mere hurt or embarrassment are not compensable. *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938)." *Alltop v. J. C. Penney Co.*, 10 N.C. App. 692, 695, 179 S.E. 2d 885, 887-88 (1971), *cert. denied*, 279 N.C. 348, 182 S.E. 2d 580 (1971). For a plaintiff to recover for emotional or mental distress in an ordinary negligence case, he must prove that the mental distress was the proximate result of some physical impact with or physical injury to himself also resulting from the defendant's negligence. *Williamson v. Bennett*, 251 N.C. 498, 112 S.E. 2d 48 (1960). *Alltop v. J. C. Penney Co., supra.* Since plaintiffs have shown no such physical impact or injury in this case, they have shown no compensable damages, and any error committed by the court with respect to issues 2, 3, 4(a) and 4(b) could not have been prejudicial.

We hold the plaintiffs had a fair trial on all their alleged claims, free from prejudicial error.

No error.

Chief Judge BROCK and Judge MARTIN concur.