GARY J. ROUSSELO, Plaintiff v. WILLIAM J. STARLING, in his official capacity and his individual capacity, Defendant

No. COA97-304

(Filed 3 February 1998)

## 1. Appeal and Error § 118 (NCI4th)— summary judgment denied—§ 1983 action—qualified immunity defense— immediately appealable

A highway patrolman's appeal from the denial of his summary judgment motion on plaintiff's 42 U.S.C. § 1983 claim arising from a traffic stop was immediately appealable where defendant raised the qualified immunity defense.

## 2. Appeal and Error § 122 (NCI4th)— traffic stop and drug search—summary judgment granted on two claims—denied on one—immediately appealable

Plaintiff's appeal of a summary judgment for a highway patrol trooper on plaintiff's claims for false imprisonment and violation of his state constitutional rights arising from a traffic stop was immediately appealable where plaintiff's claims arose from the same transaction as a § 1983 action for which summary judgment was denied and the possibility of inconsistent verdicts existed.

## 3. Appeal and Error § 341 (NCI4th)— assignment of error— contention not included—not considered

Defendant's contention that a § 1983 claim against him in his official capacity was improper because § 1983 only permits claims against a person was not the subject of a proper assignment of error and was not reviewed. N.C.R. App. P. 10(a).

## 4. Sheriffs, Police, and Other Law Enforcement Officers § 23 (NCI4th)— traffic stop and drug search—§ 1983 claim— qualified immunity

The trial court erred in not granting a highway patrol trooper's motion for summary judgment based on qualified immunity in a § 1983 claim which arose from a traffic stop, a discrepancy between plaintiff's rental agreement and the car tag, and a dog sniff for drugs. Plaintiff's right to be free from an unlawful detention and search was clearly established, but the initial stop for speeding did not violate any of his rights, the discrepancy between the rental agreement and the license tag was sufficient reason to investigate the situation, confirmation that plaintiff was

properly in possession of the vehicle was not made until after the dog alerted to the presence of drugs, which gave the trooper probable cause to search the vehicle, there is not a sufficient indication of a lack of diligence on the part of the trooper to support a finding that the detention was too long, and, assuming any irregularities in the dog sniff, there was no evidence that the trooper was aware or should have been aware of the irregularity. A reasonable person in the trooper's position would not have known that his actions violated a clearly established right and he is therefore entitled to the defense of qualified immunity.

**5. Constitutional Law § 98 (NCI4th)— traffic stop and drug search—state constitution—civil claims—adequate remedies**

The trial court properly granted summary judgment for a highway patrol trooper on state constitutional claims for unreasonable detention, search, and seizure arising from a traffic stop and drug search where there were adequate state remedies.

**6. False Imprisonment § 4 (NCI4th)— traffic stop and drug search—no illegal restraint**

The trial court did not err by granting summary judgment for defendant-highway patrol trooper on a claim for false imprisonment arising from a traffic stop and drug search where the trooper did not illegally restrain plaintiff.

Appeals by plaintiff and defendant from order entered 19 December 1996 by Judge Julius A. Rousseau, Jr., in Wilkes County Superior Court. Heard in the Court of Appeals 28 October 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, and Assistant Attorney General Jonathan P. Babb, for the defendant.*

*Elliot, Pishko, Gelbin & Morgan, P.A., by Robert M. Elliot, and Deborah K. Ross, for the plaintiff.*

WYNN, Judge.

This case arises from a stop and search of Gary J. Rousello's vehicle on 3 August 1992 by a North Carolina State Highway Patrolman, William J. Starling. In this appeal, Trooper Starling first contends that the trial court erroneously failed to grant summary judgment for him on Rousselo's claim for an alleged violation of his constitutional

rights to be free from unlawful search and seizure. We agree and conclude that under the doctrine of qualified immunity Trooper Starling was immune from suit because a reasonable person in his position would not have known that his actions violated a clearly established right. Secondly, Rousselo contends that the trial court erred by granting summary judgment in favor of Trooper Starling on Rousselo's claim for a direct violation of his state constitutional right to be free from unlawful search and seizure. In North Carolina, a direct claim for an alleged violation of a constitutional right is allowed only where there is not an adequate remedy provided by state law. Because the common law claims of false imprisonment and trespass to chattels provide an adequate remedy, we hold that the trial court did not err by dismissing the claim. Finally, we also conclude that the trial court did not err in dismissing Rousselo's claim for false imprisonment because the evidence before the trial court did not show that an illegal restraint had occurred.

The record shows that Rousselo, a resident of California, worked on a film in Tennessee until his job ended on 2 August 1992. The next day, he drove a car that he rented in Tennessee into North Carolina. At approximately 2:10 p.m. on Highway 421 in Wilkes County, Trooper Starling stopped him for driving 70 m.p.h. in a 55 m.p.h. zone.

Thereafter, Rousselo presented his California driver's license and his rental car agreement to Trooper Starling. On the rental agreement from Thrifty Car Rental, the rental car tag number was listed as TF0355. The tag on the rental car, however, was ZLN697. Shortly after stopping him, Trooper Starling asked Rousselo to sit in the patrol vehicle, and Rousselo did so.

For approximately the next twenty minutes, Trooper Starling questioned Rousselo about his background, where he was going, and his occupation. In his deposition, Trooper Starling stated that Rousselo was "evasive" and seemed "real uneasy as he sat there and talked to me, real jittery, real nervous. To me, he seemed more nervous than usual."

Trooper Starling called for backup at 2:34 p.m. Two officers were dispatched. While waiting on backup, Trooper Starling requested several record checks from the State Highway Patrol dispatcher. He called for verification of Rousselo's license, which he received. He also had a check run with the El Paso, Texas Intelligence Center ("EPIC") to determine if Rousselo had been involved with drug trafficking. At 2:42 p.m. the center responded that they had no informa-

tion on him. During this time he also continued to ask Rousselo questions, and he asked for consent to search Rousselo's vehicle, which was refused.

Trooper Starling's backup, Sergeant Pate and Sergeant Bullock, arrived at 2:50 p.m. The officers conferred amongst themselves and inspected the vehicle from the outside. At 3:02 p.m., the officers requested a canine unit from the Wilkes County Sheriff's Department. At 3:04 p.m., the dispatcher called the car rental company to determine if Rousselo had rented the vehicle.

A Wilkes County deputy arrived with a drug dog at 3:15 p.m. A few minutes after he arrived, the deputy informed the officers that the dog alerted to the presence of drugs. Also at 3:15 p.m., Thrifty Car Rental informed the dispatcher that Rousselo did rent the vehicle. From the time of the alert until 3:47 p.m., Trooper Starling searched Rousselo's car and his suitcase. No contraband was found. After the search was completed, Trooper Starling was informed of the confirmation from Thrifty. At 3:47, the deputy and the dog left the scene. Shortly thereafter, Rousselo left, followed by Trooper Starling at 3:49 p.m. From the time of the initial stop until the troopers left, a total of 99 minutes elapsed. Rousselo was cited for driving 70 m.p.h. in a 55 m.p.h. zone, and he waived his court appearance and paid the fine and court costs.

On 25 July 1995, Rousselo filed in Wake County a complaint against Trooper Starling in his official and individual capacity and against several other defendants, including the State of North Carolina and the North Carolina State Highway Patrol. The complaint raised three claims for relief arising from the stop and search: one for violation of 42 U.S.C. § 1983, another for a violation of the North Carolina State Constitution, and the third for false imprisonment. On a motion for change of venue by Trooper Starling, the action was transferred to Wilkes County. The claims against the defendants other than Trooper Starling were dismissed for failure to state a claim. On 17 September 1996, Trooper Starling moved for summary judgment. On 19 December 1996, Judge Julius A. Rousseau, Jr., denied the motion for summary judgment as to the section 1983 claim, and granted it as to all remaining claims. From this order, both parties appeal.

I.

[1] Although not discussed by either party in the briefs, we first must consider the interlocutory nature of these appeals.

ROUSSELO v. STARLING

[128 N.C. App. 439 (1998)]

"An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court in order to finally determine the entire controversy." *N.C. Dept. of Transportation v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995). Furthermore, "[a] grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Liggett Group v. Sunas*, 113 N.C. App. 19, 23, 437 S.E.2d 674, 677 (1993). There are a few exceptions to this rule, one of which is that an interlocutory order can be appealed if the trial court's order deprives the appellant of a substantial right which would be lost absent immediate review. *See Page*, 119 N.C. App. at 734, 460 S.E.2d at 334 (citing N.C. Gen. Stat. §§ 1-277(a), 7A-27(d)(1)).

Trooper Starling appeals the denial of his motion for summary judgment on the section 1983 claim, and asserts on appeal the defense of qualified immunity. In *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992), our Supreme Court held that "a denial of a summary judgment motion is normally not immediately appealable; however, under the case of *Mitchell v. Forsyth*, 472 U.S. 511, 86 L. Ed. 2d 411 (1985), when a motion for summary judgment based on immunity defenses to a section 1983 claim is denied, such an interlocutory order is immediately appealable before final judgment." *Id.* at 767, 413 S.E.2d at 280. Therefore, because Trooper Starling's motion raised the qualified immunity defense its denial affects a substantial right and is immediately appealable.

[2] Mr. Rousselo's appeal raises a more complicated question. He appeals a decision that defeated two of three claims that arose from the same factual situation.

Our Supreme Court has held that the right to avoid two trials on the same issue may be a substantial right. *Green v. Duke Power Co.*, 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982). The Court stated that "the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Id.*

This Court has interpreted the language of *Green* and subsequent cases as creating a two-part test to see if a substantial right is affected. A party is required to show that (1) the same factual issues would be present in both trials and (2) the possibility of inconsistent

verdicts on those issues exists. *Moose v. Nissan of Statesville*, 115 N.C. App. 423, 426, 444 S.E.2d 694, 697 (1994).

In this case, as all three of Rousselo's claims arose from the same transaction, the first element is met. The second element is also met because one jury could hear the facts for the section 1983 claim and rule one way while another jury could hear the same set of facts for the second two claims and rule differently, even though all three claims are based on the same facts. Accordingly, a substantial right is affected and Rousselo's appeal, although interlocutory, is properly before us.

Before turning to the merits of the appeal, we note that in *Jeffreys v. Raleigh Oaks Joint Venture*, we said that "[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits." 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Failure to make this showing subjects an appeal to dismissal. *Id.* Although we have decided to consider this appeal notwithstanding the lack of a showing, we caution appellants to remember its necessity in the future.

## II.

[3] We first consider Trooper Starling's appeal, which presents the question of whether the trial court erred by not granting summary judgment in his favor on the section 1983 claim. Rousselo's complaint raised a claim against Trooper Starling in both his individual and official capacities.

Trooper Starling first contends that a section 1983 claim against him in his official capacity is improper because section 1983 only permits actions against persons, and a state official sued in his official capacity is not a person within the meaning of section 1983. We note, however, that his sole assignment of error was as follows:

> [Trooper Starling] is entitled to *qualified immunity* on the plaintiff's first claim for relief based upon 42 U.S.C. § 1983 and the trial court erred in failing to grant his motion for summary judgment on this claim.

(emphasis added). Thus, as Trooper Starling's contention was not the subject of a proper assignment of error, we are unable to review it.

*See* N.C.R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal."). Accordingly, we do not consider the issue of whether the trial court erred as to the denial of summary judgment on the section 1983 claim against Trooper Starling in his official capacity.

[4] We next turn to the section 1983 claim against Trooper Starling in his individual capacity. Trooper Starling's brief focuses on whether he was immunized from suit under the doctrine of qualified immunity; accordingly, we focus our review on that issue.

When state government officials are sued in their individual capacities for damages under section 1983, they may assert the defense of qualified immunity. *Corum*, 330 N.C. at 772, 413 S.E.2d at 283. Police officers sued under section 1983 are not protected by qualified immunity if the officers' conduct violated " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Lee v. Greene*, 114 N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410 (1982)).

When ruling on the defense of qualified immunity, this Court must: (1) identify the specific right allegedly violated; (2) determine whether the right allegedly violated was clearly established at the time of the violation; and (3) if the right was clearly established, determine whether a reasonable person in the officer's position would have known that his actions violated that right. *Barnett v. Karpinos*, 119 N.C. App. 719, 725, 460 S.E.2d 208, 211, *disc. review denied*, 342 N.C. 190, 463 S.E.2d 232 (1995). The first two determinations are questions of law. *Lee v. Greene*, 114 N.C. App. at 585, 442 S.E.2d at 550. However, the third question is one of fact, and requires a factfinder to resolve disputed aspects of the officer's conduct. *Id.* Summary judgment is not appropriate if there are disputed questions of fact concerning the officer's conduct. *Id.*

The specific right alleged to be violated was Rousselo's right to be free from unreasonable searches and seizures as a result of his continued detention after the initial stop for speeding and for the subsequent search of his vehicle and possessions. The right to be free from an unlawful detention and search was clearly established at the time of the incident, as the right is protected by both the federal and state constitutions and has been the subject of a vast body of both federal and state case law.

We next turn to the major point of contention between the parties—whether a reasonable person in the position of Trooper Starling would have known that his actions violated these rights. Obviously, the initial stop for speeding did not violate any of Rousselo's rights. Once the vehicle was stopped, the discrepancy between the rental agreement and the vehicle's actual license tag was sufficient reason to investigate the situation. Confirmation that Rousselo was properly in possession of the vehicle was not made until after the canine unit arrived and the dog alerted to the presence of drugs, giving Trooper Starling probable cause to search the vehicle. *See State v. McDaniels*, 103 N.C. App. 175, 189-90, 405 S.E.2d 358, 367-68 (1991), *aff'd on other grounds*, 331 N.C. 112, 413 S.E.2d 799 (1992) (per curiam).

Rousselo argues that Trooper Starling did not have the required reasonable suspicion to detain him prior to the dog sniff. We disagree, and hold that on the facts of this case the discrepancy between the rental agreement and the vehicle's license tag did furnish the requisite reasonable suspicion to detain the vehicle. We further disagree with Rousselo's contention that the length of the detention was "presumptively illegal." On the facts before the trial court, there is not a sufficient indication of a lack of diligence on the part of Trooper Starling to support a finding that the detention was too long. Finally, any irregularities surrounding the dog sniff are irrelevant, assuming *arguendo* that an irregularity was present, as there was no evidence that Trooper Starling was or should have been aware of any such irregularity. Accordingly, we conclude that Rousselo's constitutional rights were not violated. And, in the context in which the parties have presented this issue, we hold that as a result, a reasonable person in Trooper Starling's position would not have known that his actions violated a clearly established right. Therefore, he is entitled to the defense of qualified immunity and the trial court erred in not granting his motion for summary judgment on this point.

### III.

[5] We next turn to Rousselo's appeal and consider whether the trial court correctly granted summary judgment against Rousselo on his claims for violations of the North Carolina State Constitution. Because there are adequate state law remedies for his claims, we hold that the trial court properly granted summary judgment.

In *Corum*, our Supreme Court held that an individual whose state constitutional rights have been abridged has a direct action for monetary damages against a state official in their official, but not individ-

ual, capacity, if there is no adequate remedy provided by state law. *Corum*, 330 N.C. at 783-87, 413 S.E.2d at 290-92.

In this case, Rousselo pled that Trooper Starling violated his rights "to be free from unreasonable detention, search and seizure, as guaranteed by Article I, sections 19 and 20 of the North Carolina Constitution." He argues that the trial court erred in granting summary judgment because there is not an adequate state law remedy for the alleged violations.

As to Rousselo's constitutional claim for unreasonable detention and seizure by a state official, the issue of whether there is a direct cause of action under *Corum* for such a claim has already been decided against him. We have previously held that "an attempt to vindicate [a plaintiff's] right to be free from restraint . . . is the same interest protected by his common law claim for false imprisonment. Plaintiff's claim for false imprisonment, if successful, would have compensated him for the same injury he claims in his direct constitutional action." *Alt v. Parker*, 112 N.C. App. 307, 317-18, 435 S.E.2d 773, 779 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994).

In *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 449 S.E.2d 240 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995), the record showed that the plaintiff had been drinking at a bar with some friends. *Id.* at 666, 449 S.E.2d at 242. After leaving the bar, she was walking near the police station when she tripped and fell. *Id.* Two officers then approached her, and after a brief conversation they took her to jail. *Id.* at 667, 449 S.E.2d at 243. She was released the next morning. *Id.* at 668, 449 S.E.2d at 243. One of the claims that she brought was a direct cause of action under the state constitution. *Id.* at 675, 449 S.E.2d at 247. We held that she had an adequate state remedy, because her "constitutional right not to be unlawfully imprisoned and deprived of her liberty are adequately protected by her common law claim of false imprisonment, which protects her right to be free from unlawful restraint. If plaintiff's false imprisonment claim is successful, she will be compensated for the injury she claims in her direct constitutional claim." *Id.* at 675-76, 449 S.E.2d at 248. (citations omitted). As a result, she could not bring a direct constitutional claim for her detention. *See id.*

In light of *Alt* and *Davis*, Rousselo's argument that he should have a direct constitutional claim for unreasonable detention and seizure fails. Because state law provides an adequate alternate

remedy, we hold that the trial court did not err in granting summary judgment on these claims. We next turn to his argument that there is a direct constitutional claim for an unreasonable search by a state official.

In *State v. Carter*, 322 N.C. 709, 712-13, 370 S.E.2d 553, 554 (1988), our Supreme Court pointed out that Article I, Section 20 of North Carolina's Constitution provides that individuals shall not be subject to unreasonable searches and seizures by the government. However, the common law action for trespass to chattel provides a remedy for an unlawful search. *See McDowell v. Davis*, 33 N.C. App. 529, 534-35, 235 S.E.2d 896, 900, *appeal dismissed and disc. review denied*, 293 N.C. 360, 237 S.E.2d 848 (1977), *overruled on other grounds, Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990).

Rousselo first contends that such a common law remedy is inadequate because he could not assert his claim against the State of North Carolina. He bases this argument on the premise that an action against a state official in their official capacity is essentially an action against the State. Because common law immunity would defeat any common law tort claim that he brought against the State, he argues there is no adequate state law remedy for his claim and therefore he is entitled to bring a claim under the North Carolina Constitution.

We find no merit to this argument. *Corum* did not hold that there had to be a remedy against the State of North Carolina in order to foreclose a direct constitutional claim. We agree with Trooper Starling that the existence of an adequate alternate remedy is premised on whether there is a remedy available to plaintiff for the violation, not on whether there is a right to obtain that remedy from the State in a common law tort action. Furthermore, we have implicitly held otherwise in *Alt*, where the existence of the common law tort of false imprisonment foreclosed a direct constitutional claim against the State. *See Alt v. Parker*, 112 N.C. App. 307, 317-18, 435 S.E.2d 773, 779 (1993), *cert. denied*, 335 N.C. 766, 442 S.E.2d 507 (1994).

Rousselo also argues that a common law remedy is inadequate because in order to recover in a tort claim against Trooper Starling in his individual capacity, he will have to show that he acted with malice, corruption, or beyond the scope of his duty. *See Jones v. Kearns*, 120 N.C. App. 301, 306, 462 S.E.2d 245, 248, *disc. review denied*, 342 N.C. 414, 465 S.E.2d 541 (1995). Because such a showing would

require more evidence, he argues that the remedy is inadequate. We disagree.

*Corum* held that the common law provides a remedy where there is an "absence of an adequate state remedy," because in the absence of such a remedy "the common law, which provides a remedy for every wrong, will furnish the appropriate action for the adequate redress of a violation of that right." *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992), *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 411 (1985). In the present case, however, there is not an absence of a remedy—the common law action of trespass to chattel provides a remedy to the wrong of an unlawful search. *See McDowell*, 33 N.C. App. at 534-35, 235 S.E.2d at 900. We decline to hold that Rousselo has no adequate remedy merely because the existing common law claim might require more of him. As the common law remedy of trespass to chattel provides an adequate vindication of the right to freedom from unreasonable searches, we hold that the trial court did not err in granting summary judgment to Trooper Starling on this claim.

## IV.

**[6]** We next turn to Rousselo's contention that the trial court erred by granting Trooper Starling's motion for summary judgment on his false imprisonment claim because when viewed in the light most favorable to the the evidence shows that Trooper Starling acted outside of the scope of official authority and in bad faith. We disagree.

In North Carolina, the elements of a false imprisonment claim are as follows: (1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will. *Fowler v. Valencourt*, 334 N.C. 345, 348-49, 435 S.E.2d 530, 532 (1993). However, Trooper Starling, as a member of the North Carolina State Highway Patrol, is a public officer. *State v. Powell*, 10 N.C. App. 443, 449, 179 S.E.2d 153, 158 (1971). "Public officers are absolutely immune from liability for discretionary acts when taken without a showing of malice or corruption." *Young v. Woodall*, 119 N.C. App. 132, 136, 458 S.E.2d 225, 228 (1995), *reversed on other grounds*, 343 N.C. 459, 471 S.E.2d 357 (1996).

In this case, Rousselo argues that the length of the detention coupled with Trooper Starling's delay in verifying his license and registration shows that Trooper Starling went beyond his official authority and that he acted in bad faith. We disagree. As we have previously

discussed in relation to the section 1983 claim, on the facts before the trial court, Trooper Starling did not illegally restrain Rousselo. Accordingly, the facts do not make out the prima facia case for false imprisonment, and the arguments relating to the public immunity defense are irrelevent. Therefore, we hold that the trial court did not err in granting summary judgment on this claim.

In sum, we do not consider whether Trooper Starling is entitled to immunity in his official capacity because he did not assign that issue as an error for us to consider in this appeal; reverse and remand for entry of summary judgment in favor of Trooper Starling on Rousselo's section 1983 claim against Trooper Starling in his individual capacity; and affirm the trial court's grant of summary judgment against Rousselo on all other claims on appeal.

Reversed and remanded in part, affirmed in part.

Judges EAGLES and MARTIN, Mark D., concur.